[No. 1781]

# Ex Parte RICKEY

1. HABEAS CORPUS—QUESTIONS REVIEWABLE.
   Where accused avers that the indictment does not allege an offense, and the state admits that the facts are stated therein, the court on *habeas corpus* must consider the question whether the indictment states an offense; and, if it does not, accused must be discharged.

2. CRIMINAL LAW—JURISDICTION.
   A court's jurisdiction in criminal cases extends only to such matters as the law declares criminal.

3. BANKS AND BANKING — DEPOSITS — RELATION BETWEEN BANKER AND DEPOSITOR.
   A receipt of a deposit by the receiving teller of a private bank is the receipt by the private banker, because he is the principal and the teller the agent, and the deposit is the banker's private property.

4. CORPORATIONS—NATURE OF CORPORATION.
   A corporation is an artificial person, a distinct legal entity, and its officers are its agents.

5. BANKS AND BANKING—DEPOSITS—TITLE TO DEPOSITS.
   A deposit received by an incorporated bank is the property of the corporation.

6. BANKS AND BANKING—OFFICERS AND AGENTS.
   The president and receiving teller of an incorporated bank acting within the scope of their authority are agents of the corporation, and not of each other, and though the president has larger powers than the teller, and may direct his acts, the president is in no sense the principal, but his acts, within the scope of his powers, are the acts of the corporation.

7. CORPORATIONS—POWERS OF PRESIDENT.
   The president of a corporation has no power, by virtue of the office itself, to bind the corporation, but his power as an agent of the corporation must be founded on the organic law thereof, or on a delegation of authority from the board of directors, and his duties arising from his office as president are confined to presiding and voting as a director.

8. BANKS AND BANKING—POWERS OF PRESIDENT.
   The president of an incorporated bank may be authorized by the directors thereof to do anything within the authority of the bank's charter, except the positive requirements that are personal, and cannot be delegated; and, when he goes beyond the scope of his usual authority, it must be shown in some way that his act was authorized by the directors.

9. BANKS AND BANKING—OFFICERS—OFFENSES—RECEIVING DEPOSIT WHEN INSOLVENT.
   An indictment alleging that accused was the president of an incorporated state bank engaged in the general banking business, and that he feloniously, by and through the receiving teller, received a deposit knowing that the bank was insolvent, does not charge accused directly with receiving the deposit within the act of March 29, 1907 (Stats.

1907, p. 414, c. 189), penalizing every officer of any bank who receives any deposits knowing that the bank is insolvent; and the indictment does not charge accused with the offense under the doctrine of agency, since the actual receipt of the deposit was by the receiving teller, and the receipt in law was by the bank.

10. STATUTES—CONSTRUCTION.
       Where a statute is plain and unambiguous, there is no room for judicial construction, but the intention of the statute must be deduced from the language used.

11. STATUTES—PENAL STATUTES—CONSTRUCTION.
       The intention of the legislature in a penal statute must be collected from the words employed when strictly construed.

12. BANKS AND BANKING—RECEIVING DEPOSIT WHEN INSOLVENT—STATUTES—CONSTRUCTION—"RECEIVES"—"ASSENT TO RECEPTION."
       The act of March 29, 1907 (Stats. 1907, p. 414, c. 189), penalizing every officer of any bank who "receives any deposits" knowing that the bank is insolvent, does not penalize the act of assent to the reception of a deposit, and, where a receiving teller of an insolvent incorporated bank received a deposit, the president, though knowing of the insolvency, cannot be punished on the theory that he assented to the reception of the deposit; the word "receives" involving an affirmative act, and does not include an assent to the reception involving only a mere passive acquiescence.

ORIGINAL PROCEEDING. Application by T. B. Rickey for writ of *habeas corpus* for his discharge from custody. **Writ granted.**

### STATEMENT OF FACTS

This is an original proceeding in *habeas corpus*. The writ was heretofore issued upon a duly verified petition in behalf of T. B. Rickey, alleging that he was unlawfully confined and restrained of his liberty by the sheriff of Nye County. From the return on the writ the following facts appear: That said T. B. Rickey, at the time of the issuance of the writ, was held in custody by the sheriff upon a bench warrant regularly issued by the Fifth Judicial District Court of the State of Nevada in and for Nye County, upon an indictment which, after entitlement, reads:

"The above named, T. B. Rickey, is accused by the grand jury of Nye County, State of Nevada, by this indictment, found this 19th day of March, A. D. 1908, of a felony, to wit, the crime of embezzlement, committed as follows: That on the 21st day of October, A. D. 1907, and before the finding of this indictment, the above-named defendant, T. B. Rickey, then being an officer, to wit, the president of the State Bank

and Trust Company, a corporation duly organized and existing under and by virtue of the laws of the State of Nevada, and which said corporation was engaged in a general banking business, and having, owning, and conducting a bank in the town of Tonopah, Nye County, Nevada, knowingly, unlawfully, and feloniously, by and through one John Doe, whose true name is unknown to this grand jury, he, the said John Doe, then and there being or acting as the receiving teller of said bank for and on behalf and under the authority of the officers of the said the State Bank and Trust Company, and of the said defendant, T. B. Rickey, as an officer, to wit, as president of the said company, did receive of and from one Peter Hertel a certain sum of money, to wit, $200, lawful money of the United States of America, which said money was then and there the property of said Peter Hertel, and which said sum of money was then and there received of and from the said Peter Hertel by the said T. B. Rickey, as an officer, to wit, as president of the said the State Bank and Trust Company, acting by and through the said John Doe as receiving teller of said bank as aforesaid, as a general deposit in said bank, the said corporation, the State Bank and Trust Company, then and there being insolvent, and he, the said defendant, T. B. Rickey, then and there knowing that the said corporation, the State Bank and Trust Company, was insolvent.   Contrary to the form, force, and effect of the statute," etc.

If the foregoing indictment charges a criminal offense, it does so under the provisions of the following act of the legislature:

"*An act making any banker, or any officer, agent, or clerk of any bank, receiving deposits, knowing that said bank is insolvent, guilty of embezzlement, and providing for the punishment thereof.*

[Approved March 29, 1907]

"*The People of the State of Nevada, represented in Senate and Assembly, do enact as follows:*

"Section 1.  Every officer, agent, teller or clerk of any bank and every individual banker, or agent, teller or clerk of

any individual banker, who receives any deposits, knowing that such bank, or association or banker is insolvent, shall be guilty of embezzlement.

"SEC. 2. Every person, officer, agent, teller or clerk convicted under the provisions of this act shall be imprisoned in the state prison for not less than one nor more than fifteen years." (Stats. 1907, p. 414, c. 189.)

Prior to the hearing upon the return of the writ proceedings in *habeas corpus* were instituted in this court in behalf of defendant in two other cases, in which the said T. B. Rickey was held on indictments alleging violation of the provisions of the said act. These three cases were heard together. At the time fixed for the return upon the writ a motion was interposed by the attorney-general to quash the proceeding, upon the ground that the defendant had theretofore been at liberty upon bond, and had voluntarily surrendered himself to the said sheriff of Nye County. No similar motion was made in the other cases, and upon the hearing the motion was withdrawn, and is not now before the court. It is claimed in each of these cases that the act under the provisions of which the several indictments were returned is unconstitutional, and in the case now under consideration that the indictment fails to charge an offense under the act in question or any offense under the law. The constitutional question involved was heretofore determined in the case entitled "In the Matter of the Application of W. B. Pittman, on Behalf of T. B. Rickey, for a Writ of Habeas Corpus" (No. 1795, decided on January 25, 1909), 31 Nev. 43, and this question requires no further consideration. At the time of the decision of the case last mentioned, the court intimated that it was, or would shortly be, prepared to render a decision upon the question of the sufficiency of the indictment involved in this proceeding, providing that the question was properly before the court, but that the court was in some doubt whether the sufficiency of the indictment was a proper matter to be determined upon *habeas corpus*. As this question had not been presented in the arguments or briefs filed, the court requested respective counsel to submit their views thereon. Upon the argument and authorities cited we are convinced that the question is

properly before the court and that it is our duty to determine it.

*James F. Peck* and *W. B. Pittman*, for Petitioner:

I.   To sustain the construction of Attorney-General Stoddard, the statute must be paraphrased: "Every officer of an insolvent bank which receives a deposit when insolvent shall be guilty, if he knows of such insolvency." The statute does not so read. If the statute did so read, it would be an abomination. Supposedly "every officer" has some material interest in the corporation. He has invested in its capital. Individually he has no control of its business nor of its concerns. He cannot close its doors, suspend its business or cause it to liquidate; only the board of directors have this power. (*Swindell* v. *Bainbridge Bank*, 60 S. E. 13; Cook on Stock and Stockholders, 716; Morawetz on Corporations, 537; *Bank* v. *Drumm*, 31 U. S. 51; *Bank* v. *Tisdale*, 18 Hun, 151; 5 Cyc. 467, 470; 10 Cyc. 907, 911; *Insurance Company* v. *Lumber Company*, 126 Ga. 334; *Bank* v. *Rawls*, 7 Ga. 176; 50 Am. Dec. 394; *Lumber Company* v. *Hobbs*, 122 Ga. 34.) Where an individual banker receives money by his agent two conditions exist. First, the agent physically receives the money; second, the money, when received by the agent, is received legally by his principal, the individual banker. In the case of a copartnership, the same identical thing occurs, except that there are a number of individuals collectively who receive the money. Each copartner has at all times the right to control the acts of the agents of the copartnership.

II.   Judge Allen, in *State* v. *Warner*, 60 Kan. 94, speaking of private bankers and the receipt of deposits by agents, says: "Whose possession immediately becomes his." How is it in case of a corporation? Do the agents of a corporation receive for the officers of the corporation? The custody of money, after its reception, is with the corporation; the beneficial use of the money is by the corporation; the possession of the teller immediately becomes the possession of the corporation; the benefit of the transaction is with the corporation, and the obligation to return the money is on the corporation. In no sense, then, can it be said that an officer of a banking

corporation receives money which he has never physically touched, and which, from a legal standpoint, has not been received by him or for his use, but which has been received, in legal contemplation, by the corporation of which he is an officer.

III. The language of the statute is plain. That language includes this case, or it does not include it. In case of ambiguity or uncertainty recourse can be had to side lights. There is no ambiguity or uncertainty in this statute. Therefore, it is idle to endeavor to discover the purpose of the legislature. It is not uncertain but appears upon the face of the statute in the words used. The word "receives" in the statute has been entirely ignored by the attorney-general, and the assumed purpose of the legislature, as the learned prosecutor sees it, is substituted for the words of the statute. No guide is necessary to the purpose of the legislature. However certain the purpose avowed by it might be, it was not left to the court nor to the attorney-general to accomplish such purpose by framing a new law or by destroying the law passed to accomplish such purpose of the legislature; the means of accomplishing it was the statute as it was framed. If that statute failed or was insufficient to bring about the desired end, the court cannot step in and supplement the terms of the statute. The legislature declares that he who "receives" is guilty. We contend that, in the language of the statute, the indictment must allege the person indicted did receive. The attorney-general meets this by saying that the statute makes a person guilty who does not receive, if such person has it in his power to prevent the reception or permits another to receive. This assumes a careless and confused use of the term "receives." There is a wide range between one who receives and one who assents to the reception or permits the reception. One who receives in fact or in law does some affirmative act. It expresses more than a passive state. The affirmative act may be by an agent, but it is, nevertheless, active, not passive. One may permit or assent by inaction, but cannot receive by inaction. To permit, implies a right or power to prevent, which power is not exercised. One receives by actually doing, either by himself or by his agent. The attorney-general con-

strues the defendant had power to close the bank.   The allegation that defendant was president is not an allegation of such power.   That could only be true if the powers of the corporation were vested in the president, and the statute vests those powers in a board of directors.   (Stats. 1907, p. 363, sec. 5.)   The power being in the board of directors to close the bank, the president could not be said to receive the deposit simply because he did not close it.   This court cannot by intendment read into the statute "permitting the receipt of money" unless it is willing to delegate to itself the powers of the legislature, for this particular case.

*R. C. Stoddard*, Attorney-General, *L. B. Fowler*, Deputy Attorney-General, *P. A. McCarran*, District Attorney of Nye County, and *E. E. Roberts*, District Attorney of Ormsby County, for the State:

I.   An incorporated bank being an artificial person, its every act is by and through its officers and agents.   The statute of Nevada does not make it an offense for the bank to receive the deposit, under the circumstances, but it aims to punish its officers and agents who do so with guilty knowledge of its insolvent condition.

II.   Whether or not the bank is incorporated, the purpose of the statute is to penalize the reception of deposits in an insolvent bank, and it would indeed be contrary to the spirit and reason of this statute to say, because a bank happens to be transacting business under a corporate character, that its president who may or may not be in fact ninety-nine per cent the owner thereof, and have absolute control over its affairs, may, with guilty knowledge of the bank's insolvency, hide behind an innocent employee, and with impunity spread his net for the unwary and confiding depositor.

*Per Curiam:*

As counsel for the state and petitioner were practically agreed upon the scope of the inquiry upon *habeas corpus*, we shall not at this time enter into an extended discussion of the question.   Suffice it to say that where, as in the petition in this case, it is claimed upon the part of petitioner that the

indictment does not allege an offense known to the law, and it is admitted by the state that the true facts are stated in the indictment, it becomes the duty of the court to consider the question thus presented; and, if the facts so alleged and admitted as true and complete do not constitute an offense known to the law, then the defendant is entitled to his discharge. The authorities supporting this view, especially those based on constitutional and statutory provisions like ours, are numerous, and apparently without conflict.

As was said in *Re Corryell*, 22 Cal. 178, quoted in *Ex Parte Kearny*, 55 Cal. 229: "The court derives its jurisdiction from the law, and its jurisdiction extends to such matters as the law declares criminal, and none other; and, when it undertakes to imprison for an offense to which no criminality is attached, it acts beyond its jurisdiction."

Chief Baron Gilbert said: "If the commitment be against law, as being made by one who had no jurisdiction of the cause, or for a matter for which by law no man ought to be punished, the court are to discharge." (Bac. Abr., Hab. Corp. B. 10.)

Lord Hale says: "If it appear by the return of the writ that the party be wrongfully committed, or by one that hath not jurisdiction, or for a cause for which no man ought not to be imprisoned, he shall be discharged or bailed." (Hale's H. P. C. 144.)

See also *Ex Parte Prince*, 27 Fla. 196, 9 South. 659, 26 Am. St. Rep. 67; *Ex Parte Goldman* (Cal. App.) 88 Pac. 819; *Ex Parte Maier*, 103 Cal. 476, 37 Pac. 402, 42 Am. St. Rep. 129; *Ex Parte Harrold*, 47 Cal. 129; *Ex Parte McNulty*, 77 Cal. 164, 19 Pac. 237, 11 Am. St. Rep. 257; *In re Buell*, 3 Dill. 116, Fed. Cas. No. 2102; *In re Farez*, 7 Blatchf. 34, Fed. Cas. No. 4644; 2 Freeman on Judgments (4th ed.) 622; 21 Cyc. 302; Hurd on Habeas Corpus (2d ed.) ch. 6, p. 324; Church on Habeas Corpus (2d ed.) p. 344, *et seq.*; Constitution of Nevada, art. I, sec. 5; Comp. Laws, 3744, 3762.

At the threshold of the consideration of the indictment we are confronted with the following allegations of fact: The indictment charges specifically the physical receipt of the deposit by one John Doe, then being or acting as the receiv-

ing teller of the State Bank and Trust Company, a corporation, acting for and on behalf of, and under the authority of, the officers of said bank, and of the said defendant, T. B. Rickey, as an officer, to wit, the president of said company; that at the time of the receipt of the deposit the said bank was insolvent, and that the said defendant then and there knew that the said bank was insolvent. The indictment further charges that the defendant received the deposit as an officer, to wit, as president of said bank by and through the receiving teller as aforesaid. This allegation, it is conceded, is a conclusion of law based upon the facts above stated. It will therefore appear from the indictment that the defendant is not charged directly with receiving the deposit, in the language of the statute, as in the cases of the other indictments returned against the defendant in the Counties of Ormsby and Esmeralda, involved in the cases recently determined. The receiving teller is not charged with knowledge that the bank was insolvent at the time of the receipt by him. Hence no question is or could be presented, nor has any contention been made, that the indictment charges the defendant with being an accessory before the fact. (*State* v. *Yetzer*, 97 Iowa, 438, 66 N. W. 737.)

The indictment further presents the case of an incorporated bank receiving the deposit, and not that of an individual banker or partnership receiving a deposit through his or their personal agent. Without going into a more minute analysis of the indictment we will consider it from the position, in reference thereto, taken by counsel in the case.

The contention of counsel for the state may be gathered from the following excerpt taken from their opening brief: "We contend that notwithstanding the fact that the Missouri and like statutes make it a crime for an officer of an insolvent bank to receive or accept, or assent to the reception of, a deposit knowing the bank to be insolvent, under the Nevada statute the receipt of a deposit by an employee of an insolvent bank is the act of the president or other officer, having the authority over the employee; and, although the statute could have been differently framed, it is not necessary that the words 'accept' or 'assent' be therein embodied in order to

convict under the same state of facts, as in the Darrah case, *supra* * * *."

The Darrah case, referred to in the brief for the state. (*State* v. *Darrah*, 152 Mo. 522, 54 S. W. 226), quotes the constitutional provision of that state which is as follows: "It shall be a crime, the nature and punishment of which shall be prescribed by law, for any president, director, manager, cashier or other officer of any banking institution, to assent to the reception of deposits, or the creation of debts by such banking institution, after he shall have had knowledge of the fact that it is insolvent or in failing circumstances; and any such officer, agent or manager shall be individually responsible for such deposits so received, and all such debts so created with his assent."

By the statute of Missouri (Ann. St. 1906, sec. 1945), passed in pursuance of the foregoing constitutional mandate, it is provided: "If any president, director, manager, cashier or other officer of any banking institution, or the owner, agent, or manager of any private bank or banking institution, doing business in this state, shall receive or assent to the reception of any deposit of money or other valuable thing in such bank or banking institution, * * * after he shall have had knowledge of the fact that such banking institution or the owner or owners of any such private bank is insolvent or in failing circircumstances, he shall be deemed guilty of larceny, and upon conviction thereof shall be punished," etc.

Counsel for the state in their brief lay stress upon the following instruction, given by the trial court in the Darrah case, which instruction, upon appeal, was found not to be subject to the objections interposed against it: "If the jury believe from the evidence that on July 10, 1893, the witness Christina Voight did deposit in the Kansas City Safe Deposit and Savings Bank, a banking institution doing business in the State of Missouri, at the County of Jackson, $300, or any part thereof, of the value of thirty dollars or more, lawful money of the United States, of the money and property of the witness Christina Voight, and shall further believe from the evidence that the said deposit was not taken and received by the defendant himself, but was taken and received by some other

person, but that such person was then and there in the employ of the said Kansas City Safe Deposit and Savings Bank, and acting under the direction and control of the defendant in said employment, and that such other person had general power and authority from the defendant to receive deposits of money into said bank, and that said bank was then and there in failing circumstances, and the defendant had knowledge that said bank was there and then in failing circumstances, they will find the defendant guilty as charged." The only objections made against this instruction were "that the jury were not therein required to find that the offense charged was committed in Jackson County, nor was it required to find from the evidence that the defendant was an officer of the Kansas City Safe Deposit and Savings Bank." The court, after stating that the instructions should be taken as a whole, that instruction No. 2 cured the objection in question, and further, that the evidence touching the points of the objection, including the admissions of the defendant himself, was without conflict, remarked: "Under such circumstances the fact that this instruction was not explicit in the particulars mentioned as it might have been could not possibly have injured the defendant." In considering the force of the instruction it must be borne in mind that Darrah was doubtless being prosecuted under an indictment charging him with the crime of assenting to the reception of the deposit. While it does not appear in the opinion what the form of the indictment was, it is indicated from instruction No. 2, which uses this language: "The court instructs the jury that if you shall believe from the evidence that the defendant  *  *  *  did then and there unlawfully and feloniously assent to the taking and receiving on deposit in said banking institution,  *  *  * you will find the defendant guilty." If it be as contended by counsel for petitioner that under the Missouri statute the assenting to the reception of a deposit, under the conditions named in the statute is a separate and distinct offense from the unlawful reception of such deposit, then instruction No. 3 would be in consonance with the character of the action in which it was given, and would throw little, if any, light on the question now before us for consideration. That the

Supreme Court of Missouri holds that the receiving and the assenting to the reception of a deposit, under conditions named in the statute, are separate and distinct offenses, is clear from the decisions of that state.

In *State* v. *Sattley*, 131 Mo. 464, 33 S. W. 41, the defendant, Sattley, was convicted for his connection with the receipt of the same deposit that Darrah was charged with having assented to the reception of, in the case of *State* v. *Darrah*, *supra*. The indictment in the Sattley case was in three counts; the first charging him with the receipt of the deposit, the second his assenting to its reception, and the third his assent to the creation of the debt knowing at the time of the insolvency of the bank. "The defendant, Sattley, was present when the money was received and the obligation issued, and himself signed the certificate of deposit as cashier of the bank." It was urged upon the appeal that the judgment of conviction should be reversed because "the jury rendered a general verdict of guilty and did not specify the count." The court, in considering this objection, said: "The evidence shows but one transaction, the receipt of the deposit and the issuing of the certificate of deposit. When the several offenses charged in the different counts of an indictment, though distinct in law, spring out of one and the same transaction, or are so connected ·in their facts as to make them parts of one transaction, the defendant cannot be prejudiced by the joinder, and the court will not compel an election, and will sustain a general verdict. (1 Bishop on Criminal Procedure, sec. 457, note 3, and secs. 458, 459; *State* v. *Testerman*, 68 Mo. 408; *State* v. *Core*, 70 Mo. 491; *State* v. *Noland*, 111 Mo. 473, 19 S. W. 715.)"

In *State* v. *Wells*, 134 Mo. 238, 35 S. W. 615, it appears that the defendant, Wells, was indicted for receiving, as cashier, a deposit of fifty dollars knowing of the bank's insolvency. On the trial "it was shown beyond controversy by the state that the defendant was not in the bank at the time the deposit was received; but, on the contrary, it was received and accepted by another employee of the bank by the name of Fin. Downs, a bookkeeper in the employment of the bank." Considering this state of facts, the court said: "It will be observed that

the statute is in the disjunctive, and under its terms it is an offense for any officer designated to receive a deposit into the bank after he shall have knowledge of its insolvency; and it is likewise an offense for such officer to assent to the reception of a deposit under these circumstances. (*State* v. *Batson*, 31 Mo. 343; *State* v. *West*, 21 Mo. App. 309.) It must be further noticed that the indictment charges only that defendant as cashier of said bank at Willow Springs received the deposit. It is nowhere alleged that he assented to the reception of the deposit. It is one thing to receive the deposit; another to assent to receiving it. Though each is an offense, they are not one and the same offense; and a charge in an indictment that the defendant received a deposit knowing the bank was insolvent is not sustained by proof of assenting only. Had the proof shown that defendant was cashier, and knowingly assented to the reception of the deposit by Downs, the book-keeper, he could not have been convicted under this indictment, which only charges a reception by defendant of the deposit. This is a criminal prosecution for a felony, and the state must establish the crime charged in its indictment, and not another, though kindred, crime. As the evidence did not tend to prove reception of the deposit, it presents a case of total failure of proof, and the court should have directed an acquittal. The attorney-general has suggested that perhaps the judgment might be affirmed on the principle announced in the Sattley case. * * * The distinction between the cases is obvious. In Sattley's case it was shown beyond peradventure that the teller who received Mrs. Voight's money was under the direction and control of Sattley, and had authority from Sattley to receive the deposit, and that Sattley himself signed the time certificate of deposit, and the indictment contained three counts; the first charging the reception of the money, the second his assent to its reception, and the third his assent to the creation of the debt knowing at the time of the insolvency of the bank."

Counsel for the state particularly direct our attention to the case of *McClure* v. *People*, 27 Colo. 358, 61 Pac. 612. The defendant in this case was convicted of a statutory larceny, upon an information charging that, as president of the Bank

of Rico, a corporation, "he received and assented to the reception of a certain deposit in said bank, knowing at the time that the institution was then insolvent." The statute of Colorado under which this conviction was had provides: "If any banker or any president, director, manager, cashier or other officer * * * of any * * * bank * * * shall receive or assent to the reception of any deposit * * * in such bank * * * after he shall have had knowledge that such bank * * *. is insolvent, he shall be deemed guilty of larceny." * * * (Sess. Laws, Colo. 1885, p. 50; 1 Mills's Ann. St. sec. 222.) It was contended by counsel for defendant in that case that the information was double; "that the receiving of a deposit in the circumstances named in the statute, and the assenting to its reception, is another and distinct offense, and that, while the two may be separately set forth in the same information, it is improper to combine them in one count." After reviewing many authorities, including the Missouri cases, *supra*, the court expressed its conclusion upon the point raised as follows: "We are of the opinion that where, as in the information here, the receiving of a deposit and the assenting thereto are charged as having been done by the same person, at the same time, and relate to the same transaction, and the punishment for both or either is the same, they may be combined in one count, and together constitute but one complete offense, for which there can be but one punishment. In other words, where two or more acts, stated in the statute disjunctively, either of which is an offense by itself, if done by different persons or at different times, when done by the same person, and at the same time, and relate to the same transaction, and are followed by the same penalty, they may be united in one count of an indictment or information as constituting but one offense." It will therefore be seen that the Colorado court did not hold, nor intimate, that the receiving and assenting to the reception under the statute were one and the same offense, but distinctly held that "either of which is an offense by itself, if done by different persons or at different times"; that only in a case where the receiving and assenting "were done by the same person, and at the same time, and relate to the same transaction," could the two offenses be united in one

count of an indictment or information.   While this case was
reversed on other grounds, it clearly appears from the opinion
that had the defendant's conviction been sustained, it would
have been upon that portion of the information which charged
him with assenting to the reception of the deposit.  The court,
after reciting the fact that the person who took the deposit
was an employee of the bank and authorized to receive depos-
its, and after considering the relation of the defendant to the
bank as its president, said:  "By such conduct he clearly
assented to the reception of deposits.   It was not essenial to a
conviction that he should assent to this particular deposit, or
that he should have acquiesced in its reception after he had
obtained actual knowledge after it had been made.   His recog-
nition of the general authority of the teller to receive deposits,
without taking any steps to prevent such action, after he
knew, or in law is charged with knowledge of insolvency, is
an assent to the reception of this deposit.   *  *  *   (*State* v.
*Sattley*, *supra*.)"

The case of *State* v. *Warner*, 60 Kan. 94, 55 Pac. 342, was a
case involving the conviction of the president of a banking
corporation.   The indictment contained eleven counts, upon
four of which he was convicted.   Considering that case, the
court said:  "The charges contained in the counts of the
information under which the conviction was had were all that
the defendant accepted and received on deposit the several
items described.   It must be borne in mind that the Baxter
Bank was a corporation.   The connection of the appellant
with it was that of an officer.   He is not charged with being
the owner.   The other persons connected with the bank were
its officers and employees.   Possibly a private banker, who
employed clerks and servants to receive deposits, might be
bound even in a criminal case where their possession immedi-
ately became his, but the statute as framed seems to denounce
its penalties against the individual who shall take deposits
into the bank when he knows it to be insolvent, and also
against all others who knowingly permit or connive at their
reception.   In the case of *State* v. *Wells*, 134 Mo. 238, 35 S. W.
615, construing a Missouri statute making it a larceny for an
officer of a banking institution to receive or assent to the

reception of a deposit, it was held by the supreme court of that state that a charge that the defendant received a deposit knowing the bank to be insolvent was not sustained by the proof of his assenting only, and that, as the evidence did not tend to prove the reception of the deposit, there was a total failure of proof. Whether the evidence given at the trial in this case was sufficient to uphold a charge against the defendant of having permitted or connived at the receipt of the deposits we need not decide. The charge is that he accepted and received. The word 'accepted' implies that the bank received, and that he agreed and assented to the reception. He could not accept without at least knowing what was received. The proof being insufficient to sustain the conviction under these counts of the information, the motion for a new trial should have been sustained."

The case of *State* v. *Cadwell et al.*, 79 Iowa, 434, 44 N. W. 700, cited by counsel for the state, is a case of individual bankers. The two defendants were the owners and managers of two banks in the State of Iowa. The Iowa statute (Laws 1880, p. 148, c. 153) provided "that no bank, banking house, * * * firm, company, corporation or party engaged in banking, * * * or deposit business shall accept or receive on deposit, * * * any moneys, * * * when such bank, banking house, * * * firm or party is insolvent," and that "if any such bank, banking house, * * * firm * * * or party shall receive or accept on deposit, any such deposit as aforesaid, when insolvent, any officer, director, cashier, manager, member, party or managing party thereof, knowing of such insolvency, who shall knowingly receive or accept, be accessory to, or permit or connive at, the receiving or accepting on deposit therein, or thereby, any such deposits as aforesaid, shall be guilty of a felony," etc. In this case "at the time the deposit in question was received one John X. Aleck was cashier of defendant's bank at Logan, and issued the certificate, and at the time neither of the defendants was present. The certificate against the objection of the defendants was admitted in evidence, and the ruling is made a ground of complaint here. A specific ground of complaint in the argument is that the defendants were

indicted for receiving the deposit, and it is not competent to show on the trial that the money was received by another other than the defendants personally. We think no such rule has ever been held by a court of last resort. On the contrary, a general and well-recognized rule is that if a person does the act constituting the offense through the agency of another, the act is his, and it is not necessary to aver the agency in the indictment. It may be charged directly as his act, and proof that he did the act through the agency of another will sustain a conviction. * * * It is further said in this connection that the defendants are not charged with permitting or conniving at the receiving of the deposit, but with receiving it themselves, and that under the averments of the indictment the proofs as to Aleck's receiving the money are not admissible. The rule above announced is conclusive of this question. The defendants are indicted as a firm of bankers, and as such they are charged with receiving the money; and it is entirely immaterial whether they received it in person or through their cashier. In law, if they permitted him to do it for them, they did it themselves."

In the foregoing case the law of principal and agent is clearly involved. The bank was not the property of a corporation, as in the case at bar, but that of a partnership. When a deposit was received into such bank it became the property of the defendant partners. As individual owners of the bank they were principals in all transactions of the bank, and the act of their cashier was in law their own act. This case can have no bearing upon the question under consideration here, unless the legal status of principal and agent exists between the president and the receiving teller of an incorporated bank. In all of the cases where a private banker or members of a partnership conducting a private bank have been convicted of a violation of law for receiving deposits after the bank had become insolvent, it clearly appears that the receipt by the agent was in law the receipt of the principal. Hence the principal, or principals, in such cases come within the direct provisions of the statute.

If in this case it appeared from the indictment that Rickey was a private banker, conducting the bank in question, then,

as a matter of law, the receipt of a deposit by the receiving teller of his bank would be a receipt by himself, because he would be the principal and the teller the agent, and the deposit when received would be his private property. Such is not the case of an incorporated bank. The corporation is an artificial person, a distinct legal entity. (*Edwards* v. *Carson W. Co.*, 21 Nev. 479.) The deposits received into such bank became the property of the corporation. (*Smith's Cash Store* v. *First Nat. Bank*, 149 Cal. 32, 84 Pac. 663, 5 L. R. A. 870.) The corporation is the principal, and its officers are its agents. Both the president and the receiving teller, acting within the scope of their authority, are agents of the same principal, and hence are not agents of each other. (10 Cyc. 771, 772, 831.) The president of a bank may, or may not, under the by-laws, or by authority conferred by the board of trustees or directors, have larger powers than a receiving teller, for example, and may even have direction and control over his acts; but this is not because he is a principal in any legal sense of the word. His acts, within the scope of his powers, are the acts of the corporation, the real principal. As an individual the president can exercise no legal power or control.

Concerning the ordinary powers of the president of a corporation, Cook, in his work on Stock and Stockholders and Corporation Law, 716, says: "The general rule is that the president cannot act or contract for the corporation any more than any other one director. The question has frequently been before the courts, and many decisions have been rendered in regard to it. The question seems to have arisen in many forms, and the great weight of authority holds that a president has no inherent power to represent or contract for the corporation. His duties are confined to presiding and voting as a director."

Judge Thompson, one of the most eminent authorities upon corporation law, and author of the chapter on Corporations in the Cyclopedia of Law and Procedure, says: "The president of a private corporation is, as the term implies, the presiding officer of its board of directors and of its shareholders when convened in general meeting, The office itself, however, confers no power to bind the corporation or control its property.

The president's power as an agent must be sought in the organic law of the corporation, in a delegation of authority from it, directly or through its board of directors, formally expressed or implied from a habit or custom of doing business." (10 Cyc. 903.) "The appointment of the president of a corporation to the office of general superintendent or manager necessarily invests him with the powers incident to that office or agency." (10 Cyc. 909.)

But whether acting strictly as president, or in the added capacity of general manager, he is the agent of the corporation, and not a principal. Referring specifically to the powers of a bank president, the following is from 5 Cyc. 468: "In some cases a president receives only a nominal salary, is expected to devote only a portion of his time to the business, and is not required to exercise the same degree of care and foresight as a president who is the real head and manager, and who possesses all the authority of the cashier. He may, however, be authorized by the directors to do anything within the authority of the bank's charter, except those positive requirements that are personal and cannot be delegated; but, when he goes beyond the scope of his usual authority, it must be shown that in some way his act was authorized by the directors."

In the case of *Wallace* v. *Lincoln Savings Bank*, 89 Tenn. 630, 15 S. W. 448, 24 Am. St. Rep. 625, the court said: "Bank directors are not expected to give their whole time and attention to the business of the company. The customary method in regard to such associations is that the active management and responsible custody is left to the cashier, and other agents selected by the directors for that purpose. These are paid salaries, demanding their skill, and time should be given to the duties of immediate management. As a rule, the custodian of the assets is the cashier. The duty of directors with respect to such is to supervise, direct, and control. These agents, though usually selected by the directors, are not the agents of the directors, but agents of the corporation. (Morawetz on Private Corporations, 552, *et seq.*) The neglect which would render them responsible for not exercising that control and direction properly must depend on the circum-

stances of each particular case. They are not insurers of their fidelity, and they are not liable for their acts on any principle of the law of agency."

Under the indictment in this case the actual receipt of the deposit was by the receiving teller; the receipt in law was by the corporation, the State Bank and Trust Company, and not by the defendant. Clearly, then, we think the indictment cannot be sustained upon the doctrine of agency. If this indictment can be sustained at all, it must be, as we view it, upon the ground that the defendant is charged, in effect, with assenting to the reception of the deposit after he knew the bank was insolvent. This, of necessity, involves the construction of the statute itself. Is the statute broad enough to include in its provisions the penalization of the act of assenting to the reception of a deposit knowing the bank to be insolvent? "Every officer, agent, teller or clerk of any bank, * * * who receives any deposit * * * knowing that such bank is insolvent shall be guilty, * * *" is the language of the statute. The language is plain and unambiguous. The personal pronoun "who" has for its antecedents the words "officer, agent, teller, and clerk." The word "receives" has a well-understood meaning. (*Hallenbeck* v. *Getz*, 63 Conn. 385, 28 Atl. 519.) The receiving of a thing and the assenting to its reception are two separate and distinct affairs. The one involves an affirmative act; the other is mere passive acquiescence. (3 Cyc. 1110.) That the legislature was laboring under no misconception of the ordinary use of these terms is evidenced by the fact that upon the same day that the penal statute was passed a general act providing for the incorporation of banks was passed, section 11 of which act provided: "It shall be unlawful for any president, director, manager, cashier, or other officer, to assent to the reception of deposits, after he shall have had knowledge of the fact that it is insolvent, or in failing circumstances. * * * Every person violating the provisions of this section shall be individually responsible for such deposits so received. * * *" No other liability or penalty was imposed by said act. "The rule is cardinal and universal that if a law is plain and unambiguous, there is no room for construction or interpretation."

(*Brown* v. *Davis*, 1 Nev. 409.) "When the language of a statute is plain, its intention must be deduced from such language, and the courts have no right to go beyond it." (*State* v. *Washoe County*, 6 Nev. 104.)

This court in *Ex Parte Deidesheimer*, 14 Nev. 311, said: "Penal laws generally prescribe what shall or shall not be done, and then declare the consequences of a violation of either requirement. They should be plainly written, so that every person may know with certainty what acts or omissions constitute the crime. (Bish. on Stat. Crimes, 193; Beccaria on Crimes, 22, 45; *The Schooner Enterprise*, 1 Paine, 33, Fed. Cas. No. 4499.) * * * And in the *United States* v. *Wiltberger*, 5 Wheat. 76, 5 L. Ed. 37 (opinion by Chief Justice Marshall), the court says: 'It has been said that although penal laws are to be construed strictly, the intention of the legislature must govern in their construction. That if a case be within the intention, it must be considered within the letter of the statute. The rule that penal laws are to be construed strictly is perhaps not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals, and on the plain principle that the power of punishment is vested in the legislative, not in the judicial, department. It is the legislature, not the court, which is to define a crime and ordain its punishment. * * * The intention of the legislature is to be collected from the words they employ. Where there is no ambiguity in the words, there is no room for construction. The case must be a strong one, indeed, which would justify a court in departing from the plain meaning of the words, especially in a penal act, in search of an intention which the words themselves do not suggest. To determine that a case is within the intention of a statute, its language must authorize us to say so.' See also Sedgwick on the Construction of Stat. and Const. Law, 279, *et seq.*; Smith's Commentaries, 746; Bish. on Stat. Crimes, 192, *et seq.*" Considering the construction of a penal statute in the case of *State* v. *Wheeler*, 23 Nev. 143, 152, this court said: "Being penal, the proviso exempting persons from the operation of the law should, on the other hand, receive a liberal interpretation. Mr. Bishop states the rule

thus: 'While the parts of a penal statute which subject to punishment or a penalty are, from their odious nature, to be construed strictly, those which exempt from penal consequences will, because of their opposite character, receive a liberal interpretation.' (Bishop, Writ. Laws 196, 226.) To the same effect are Sutherland, Stat. Const. 227; Endlich, Stat. Int. 332."

In addition to the fact that Missouri, Kansas, and Colorado courts have had occasion to hold that the receiving and the assenting to the reception of a deposit knowing the bank to be insolvent are separate and distinct offenses, and that there are no decisions to the contrary, the fact that most of the states which have passed statutes upon the subject have specifically, or in effect, provided that assenting to the reception of a deposit under the conditions named in the statute constitutes an offense, is a very strong intimation at least that these law-making bodies deemed such provisions necessary in order to penalize officers of incorporated banks, who probably are mainly responsible for the condition of the bank, yet do not actually participate in the receipt of the deposit. A brief reference to the statutes of the various states that have had occasion to consider prosecutions under acts making it a crime to receive deposits into banks after they are known to be insolvent will serve to show the difference in the extent of their penal provisions. The statutes of Nevada, California, and Illinois impose a penalty on those who "shall receive" the deposit; that of Pennsylvania on those who shall "take and receive"; that of Wisconsin on those who shall "accept or receive"; the statutes of Missouri and Colorado on those who "shall receive or assent to the reception"; and those of Iowa, Kansas, Minnesota, and South Dakota on persons who shall "accept or receive, be accessory to, or permit or connive at, the receiving or accepting," etc. Speaking of the Iowa statute the court in State v. Yetzer, supra, said: ."The legislative purpose was evidently to be comprehensive so as to omit from the provisions of the act none who might be parties to the fradulent acts." As heretofore stated by this court, the Nevada statute is a copy of the California statute, excepting that the California law only makes the offense a misdemeanor.

The California Reports do not contain a case in which the provisions of this law were called in question, or where any prosecution thereunder was involved. The statute of this state only imposing a penalty upon the person "who receives" a deposit into a bank with the knowledge of the bank's insolvent condition, and it being manifest, not only from the established rules governing the construction of penal statutes, but from all the authorities that have had occasion to consider the question, that the word "receives" cannot be construed to include "assent to reception," it follows that the statute of this state only imposes a penalty upon that person or officer of a private or incorporated bank who receives a deposit, either in fact or law, knowing the bank to be insolvent. As the indictment in this case charges the receipt in fact to have been by the receiving teller as a general deposit in the bank, there is presented but one question, Does it charge the defendant with a receipt in law?

The doctrine seems to be settled, without any conflict whatever, that in the case of an incorporated bank the receipt in law is by the corporation itself; that under facts as stated in the indictment in this case both the defendant and receiving teller were agents of the same principal, to wit, the corporation, and that, as between themselves, no relationship of principal and agent was involved. The assertion made by counsel for the state in their brief that "the receipt of a deposit by an employee of an insolvent bank is the act of the president, or other officer having authority over the employee," is not only not supported by any authority cited by them, but is opposed by the whole current of authority both of text-writers and decisions of courts. We have been impressed that counsel for the state have realized their inability to support their position in the law; hence the desire, repeatedly expressed by them, that this court pass upon the merits of the questions presented upon the face of the indictment. A very extensive and careful examination of these questions has conclusively shown to the court that in no instance have we been able to find one that could be regarded as being close.

Finally, it must be conceded that when the legislature saw fit to deal with the subject of insolvent banks, it had power to

limit the extent of the penal provisions. It had power, if it saw fit, to impose a penalty only upon those who received deposits either in fact or in law. If this was the intention of the legislature, it would be difficult to find words more expressive of that intent than those used in the act in question. As the language used in the statute warrants the court only in determining such to be the intent of the legislature, we are bound to construe the statute accordingly. With the wisdom and policy of statutes courts have nothing to do; that function is exclusively the province of the legislature.

We have pointed out how the legislatures of various states have dealt with the question of receiving deposits by insolvent banks. It is not within the power of this court to extend the provisions of the statute beyond the limits fixed by the legislature. If we could read into our statute provisions such as appear in the laws of Colorado, Missouri, Iowa, Kansas, or Minnesota, for example, a very different legal question would be presented, but to do so would be a usurpation of powers, which the Constitution has imposed upon the legislature and denied to the courts. The indictment in this case fails to charge an offense against the laws of this state.

The defendant is legally entitled to be discharged, and it is so ordered.