[No. 1454.]

STATE OF NEVADA, APPELLANT, v. JOHN T. WHEELER
AND SAMUEL WHEELER, PARTNERS UNDER FIRM
NAME OF WHEELER BROTHERS, RESPONDENTS.

LICENSE—LANDHOLDERS.—The word "holder," as used in Statutes 1895, p.
53, requiring sheep·owners who are not the owners and holders of
one acre of land for each two sheep to procure a license, means one
who is in possession, actual or constructive, of the land.

LESSEE OF THE LAND—OWNER.—A lessee of land for a fixed term is an
owner thereof, within the meaning of that law.

PENAL STATUTE, CONSTRUED STRICTLY.—That statute, although a revenue
measure, is a penal statute, and should be construed strictly. A
proviso in a penal statute exempting persons from the operation of
the act should be construed liberally in favor of the subject. (Syl-
labus by BIGELOW, C. J.)

APPEAL from the District Court of the State of Nevada,
Elko county; A. E. Cheney, District Judge:

Action by the State of Nevada against John T. Wheeler
and Samuel Wheeler, partners under the firm name of
Wheeler Brothers. Judgment for defendants, and the State
appeals. Affirmed.

Action to recover $350 as license money due upon 7,000
head of sheep, and for $25, the statutory penalty for failing

to procure the license in advance, under Stats. 1895, 53, the material portions of which act are as follows: "Section 1. Every person now engaged in, or who may hereafter engage in, the business of owning, raising, grazing, herding or pasturing sheep, as either owner, lessee or manager of said sheep, in any county in the state of Nevada, must annually procure a license therefor from the sheriff, as collector of licenses of each of such counties, and make payment therefor as follows, in advance, for each band, flock or bunch of sheep: [Then follow provisions dividing such persons into seven classes, in proportion to the number of sheep owned or controlled by them, and providing substantially that they must pay $50 per thousand head thereof, after which the section proceeds:] *provided*, that the provisions of this act shall not apply to any person, persons, company, association or corporation who shall be the owner and holder of land in the state of Nevada equal to one acre for each two sheep so owned, raised, grazed, herded or pastured." * * * Section 2 provides a punishment of fine and imprisonment for failing to procure the license. Section 3 directs the district attorney to bring suit for the license money due, and that there shall be entered up in the judgment the additional sum of $25 as penalty for failing to procure the license. The facts are that the defendants are the owners of 7,000 sheep, which, from May 3, 1895, to the bringing of this action, August 27, 1895, they have been engaged in herding and pasturing in Elko county, without having procured the license required by the above statute; that the Central Pacific Railroad Company, a duly organized corporation, is the owner of 8,980 acres of land in Elko county, which, prior to May 3, 1895, the company had leased to the defendants, said lease commencing April 25, 1895, and running to January 1, 1896. Also, that defendants have contracts with the state of Nevada for the purchase of 1,400 acres of land owned by said state, the possessory title to 160 acres of unsurveyed government land, and a lease of 420 acres of land in Eureka county, from the individual owner thereof.

*W. A. Massey*, for Appellant:

I. The decision of this appeal, under the assignment of

errors, involves but one question—the construction or interpretation of the phrase "owner and holder," as used in section 1 of the act of 1895. (Stats. 1895, p. 53–54.)

II. The appellant contends that it was the manifest intention of the legislature that the exemption provided for in section 1 of said act should be enjoyed by those only who held the title and the actual possession of lands in Nevada, and that a person who holds public lands by a mere possessory right, or as lessee, is not entitled to the exemption.

III. In support of the contention on the part of appellant the following well-established and settled rules on construction and interpretation are submitted to the court: In the interpretation of any phrase of a statute, the first thing to be ascertained is the purpose the legislature had in the enactment of the law, and, when that is known, every section should be interpreted with reference to such purpose, and with a view to giving full and complete effect to it. (*Rooney* v. *Buckland*, 4 Nev. 45.) It is an elementary rule of construction that words and phrases are used in a statute in their popular and common acceptation. (*State* v. *Payne*, 29 Pac. Rep. 787; *Ormsby Co.* v. *State*, 6 Nev. 283; *Quigley* v. *Gorham*, 5 Cal. 418; *Jones* v. *Jones*, 36 Am. Dec. 723.) There can be no departure from the plain meaning of a statute on the ground of its unwisdom or public policy. (*Hadden* v. *Barrey*, 5 Wall. 107; *Flint River Steamboat Co.* v. *Foster*, 48 Am. Dec. 248; *Adams* v. *Howe*, 7 Am. Dec. 216.)

IV. Applying these rules of construction to the phrase "owner and holder," as used in this act, without regard to the hardship or impolicy of the law, the appellant insists that the legislature clearly and manifestly intended that only those persons should be entitled to the exemption allowed by the act who held the title and were in actual possession of lands in this state. The popular meaning or common acceptation of the word "owner" implies something more than the mere right of possession—something more than is implied by the word "holder." The lessee of lands is the holder of lands, but not, according to the common meaning, the owner and holder. If the legislature had intended that the holder of lands should be entitled to the exemption, that the lessee of lands or the one having a mere

possessory right to lands should enjoy the benefits of the exemption, the word " or " would have been used in the law instead of the word " and." Any other construction would do violence to the intention of the legislature, and to the use of the English language as understood in its popular meaning. (Black's Dict., "Owner"; Rapalje & Lawrence's Dict., "Owner.")

V. It was contended that the word " owner " had no precise legal signification, and could be applied to any defined interest in or to real estate, and, while admitting this contention to be true, the appellant insists that the various defined meanings given to the word by the courts have depended almost entirely upon its use in the particular statute, and upon the general purpose and object of the statute. The legislature of this state, in the act under consideration, did not intend that there should be any uncertainty in the meaning of the word as used in said section, for it gave an exact and well-understood meaning by limiting the exemption not to the " owner," but to the " owner and holder " of lands. The meaning of the word is restricted and limited by the phrase " and holder " to one who not only possesses, but to one who has the legal title to the same.

VI. If the rule laid down in 4 Nev. 45, that phrases in a statute should be interpreted so as to give complete effect to the statute, then the interpretation given by the trial court, and insisted upon by respondents, is wrong, for the ownership and character of the major portion of the lands of this state are such that the law is rendered inoperative as a police regulation or a revenue measure.

VII. This act being a revenue measure, based upon the power above indicated, with an exemption that is so discriminating as to render the clause containing such exemption unconstitutional, this court will not declare the entire act void, unless the clause containing the unconstitutional exemption enters so into the scope and design of the act that it would be impossible to maintain it without the obnoxious provision. (*Willis* v. *Austin*, 53 Cal. 152; *State* v. *Eastbrook*, 3 Nev. 180; *Robinson* v. *Bidwell*, 22 Cal. 386; *Evans* v. *Job*, 8 Nev. 342; Cooley's Constitutional Limitations, 177.)

*Thomas Wren,* for Respondent:

I.   Nothing appears upon the face of the act by which we can determine what the legislature intended by the use of the term "owner." We know what the popular meaning of the word is in this state as applied to possessory titles of all kinds. The man who took possession of a mining claim before the passage by congress of the laws regulating the possession of mining claims was universally spoken of as the owner of the mining claim, and in the courts he had precisely the same standing that the owner in fee would have had. From the foundation of this state to the present time the person in possession of public lands, with no better title than a mere naked possession, was popularly known as the owner of the land, and in all legal proceedings he was treated as the owner of the land. In regard to the lessees of land, it would be difficult to determine just what the popular idea was, but the lessee for the time being was accorded all the rights of ownership, both by the people and the courts, that the owners of land in fee simple possessed. Probably the true solution lies in the adoption of the rule of statutory construction established by the courts, that a word or phrase used in a statute that is ambiguous, unless they are words of restriction in the statute itself, must be construed as having been used in the most extended sense in which the word or phrase is used. The user of land in most of the states is held to be the owner for a great variety of purposes. (*Sankey* v. *Noyes,* 1 Nev. 68; Anderson's Law Dictionary, "Owner" and "Titles."

II.   The decision in *Sankey* v. *Noyes* has been followed by an unbroken line of decisions by this court down to the present time.

III.   Another rule may be invoked to determine the proper construction to be placed upon the phrase "owner and holder," and that is that penal statutes will always be liberally construed in favor of parties accused of violating them. (*Ex parte Deidesheimer,* 14 Nev. 311; Bishop on Statutory Crimes, secs. 194, 216, 218, 220.)

IV.   This statute is penal. It imposes penalties of both fine and imprisonment for its violation, and following the above rule of construction, the phrase "owner and holder"

should be given its broadest definition. There is one view of the case, though rather shadowy, that may aid to a slight extent in ascertaining the intention of the legislature in using the phrase. It is possible that the legislature intended that the sheep owner should hold at least one acre of land for each two sheep in the state, by some sort of title, that quantity being deemed sufficient to support the sheep he might own. It is more probable, however, that the law was passed and the phrase used for the purpose of preventing sheep owners not residents of the state from driving their sheep into the state during any portion of the year and pasturing without owning or holding any landed property in the state. The fact, however, that the law hampers the sheep owners who reside in the state, and who own no land by any title, militates against this view.

V. Ownership is generally defined as one who has dominion of a thing, real, personal or incorporeal, which he has a right to enjoy and do with as he pleases, even to spoil or destroy it, as far as the law permits, unless he be prevented by some agreement or covenant which restrains his right.

VI. The word " owner " includes any person who has the usufruct control or occupation of the land, whether his interest in it is an absolute fee or an estate less than a fee. (Am. and Eng. Ency. of Law, vol. 17, 299–300.)

By the Court, BIGELOW, C. J. (after stating the facts):

The constitutionality of the act under which this action is brought has been quite ably argued before us, but as, in the view we take, the case can be disposed of without deciding that point, we do not consider it. (*State ex rel. Guinan* v. *Meder*, 22 Nev. 264.) Aside from that, the question presented is whether the defendants were required to procure the license provided for in the act of March 12, 1895. This turns upon whether, as lessees of certain land for a fixed term, they are the " owners and holders " of it, within the meaning of the proviso to section one of that act.

As used here, neither of these words has a defined legal meaning, nor is the sense in which the legislature intended to use at least one of them by any means clear. As defined by the law dictionaries, the word " holder " means one who

is legally in possession of a negotiable instrument, but of course that is not the meaning intended here. Webster gives it also the legal meaning of one who holds land, etc., under another; a tenant. But its popular meaning is one who holds, and as used here it was probably intended to mean one who is in possession, actual or constructive, of land. One whose title vested in him the right to the immediate possession, and who could, at any time, without let or hindrance, take actual possession, would doubtless be deemed the holder of the land, although not then in its actual possession.

But the word " owner " is not so easily defined. Generally, as stated in 1 Hare, Const. Law, 355, it is *nomen generalissimum,* and may be applied to any defined interest in real estate. (*Gitchell* v. *Kreidler,* 84 Mo. 476.) As used in statutes providing that property shall be assessed to the owner, it has been held to mean the owner in fee, and not to include a lessee (*Davis* v. *Cincinnati,* 36 Ohio St. 24: 25 Am. and Eng. Ency. 120), while in other cases what seems to be exactly the opposite has been decided (25 Am. and Eng. Ency. 122). In homestead statutes it includes equitable, as well as legal, owners (*Lozo* v. *Sutherland,* 38 Mich. 170; *Wilder* v. *Haughey,* 21 Minn. 101), while in condemnation proceedings it embraces all having estates in the land, either in possession, reversion or remainder (*Watson* v. *N. Y. Cen. R. R. Co.,* 47 N. Y. 162), and in statutes providing for redemption from forced sale, all who have a substantial interest in the premises (Cooley, Tax. 558). In *Wellington* v. *State,* 52 Ark. 266, a prosecution under a statute forbidding hunting within enclosures without the consent of the owner, the court said: " One who has the control, use and possession of land, as against the real owner and all others, is, in law, the owner of such lands within the meaning of the act."

In *Moeller* v. *Harvey,* 16 Phila. 66, and *Schott* v. *Harvey,* 105 Pa. St. 222, an act of the legislature requiring the owners of factories to provide fire escapes for the use of their employees came under review, and it was held that the statute applied to the lessee of a factory who was actually operating it, and not the owner in fee of the premises. In the former case the court said: " In like manner he is an owner to whom

the premises will revert on the expiration of the lease, while the lessee has a right of ownership which is equally real, whether the term is for one or a hundred years. In fine, they are owners who have a title that will or may be reduced to possession at a future period, and they who are in possession by virtue of an existing right, however brief." And again in the latter case (105 Pa. St. 228): "The term 'owner' is undoubtedly broad enough to cover either view of the case. A tenant for years, a tenant for life, and a remainder man in fee is each an owner. So there may be a legal and an equitable estate; the trustees and *cestui que* trust are both owners. When, therefore, the legislature used a term of such varied meaning, we must presume they intended such an owner as is in the possession and occupancy of the premises, who has the immediate dominion and control over it, and the manner of whose use makes a fire escape necessary. Had the owner in fee been intended, it was easy to have said so." Where words of such uncertain meaning are used in a statute, the sense they were intended to bear must be determined from a consideration of the whole statute and its subject matter, aided by certain general rules of statutory construction, presumed to be known to lawmakers as well as courts, such as that some kinds of statutes are to be construed strictly and others liberally.

1. First, we will consider the statute and its subject matter. For some reason the legislature saw fit to require persons owning or controlling sheep to procure licenses, but exempted from the operation of the law the owners and holders of a certain amount of land. We must suppose that the purpose of the law was to obtain additional revenue, but, if so, what reason could there have been for the exemption? If it was proper to put this additional burden on those engaged in the sheep industry, why exempt the owners of land any more than the owners of watches or any other kind of property? It is difficult, indeed, to find a satisfactory answer to this inquiry. There seems but little, if any, logical connection between the two. The sheep do not have to be kept on the land, nor need the land be used in connection with them. Indeed, it need not even be in the same county. But we are bound to suppose there was some reason

for it, some honorable reason for it, as in construing a law we are not permitted to indulge in the belief, if it can be avoided, that the legislature acted either for the purpose of favoring certain individuals, or to injure and destroy the business of others, or without reason of any kind. If this reason can be found, it may assist in elucidating the statute. It has been suggested that it was thereby intended to reach and subject to taxation wandering bands of sheep from other states that have heretofore been driven in for pasturage after one assessing season closes, and then driven out again before the next opens, thereby robbing our herds of pasturage, and yielding no revenue to our coffers. As is well known, some of these wandering shepherds are like the Arabs—here to-day and there to-morrow—without fixed places of habitation anywhere. They are the owners of no land by any sort of title, and, consequently, it only being intended to reach them, the exemption should be extended to all who are; for those holding land either by possessory title, by lease, by contract of purchase from the state, or by homestead or pre-emption claim, are generally, equally with those holding by title in fee, permanent residents of the state, and pay taxes on their property the same as other residents. Perhaps there is not much force in this reasoning, and the suggested purpose of the enactment of the law in its present shape may not be the true one, but it is at least a reason, and about the only one that can be offered that should have had any weight with the legislature.

2. Another reason for the conclusion that it could not have been the intention to exempt only owners in fee, is that the great mass of land held for stock purposes in this state is not held by that title, but by contract of purchase from the state. Of this land, while having no legal title, the vendees are the equitable owners, and they are generally considered and treated as the full owners thereof. Such lands are mortgaged, conveyed, taxed, homesteaded and sold under execution, substantially the same as land held under the most absolute title, and it cannot have been the intention that such ownership, sufficient for all other purposes, should be insufficient for this. The same may be said of possessory titles to the public domain. Except as against the United

States or its privies, the holders of such titles are treated, for most purposes, as the absolute owners of the property. And yet, if all such titles are not sufficient under this law, then none are; for the legislature must either have meant all of them, or none but title in fee.

3. But perhaps the strongest reason that can be given for the conclusion which we here announce is that this is a penal statute, and as such requires a strict construction when against a citizen, but a liberal one in his favor. "A penal statute is one which imposes a forfeiture or penalty for transgressing its provisions, or for doing a thing prohibited." (Dwarris, Stats. 74; *Woolverton* v. *Taylor*, 132. Ill. 137; *Bond* v. *Railroad Co.*, 67 Iowa, 716.) Penal statutes include those that enforce a fine or pecuniary recovery. (Sutherland, Stat. Const., sec. 358.) It has sometimes been said that revenue laws are not penal, but however that may be with statutes imposing taxes generally, which are to be collected by the means ordinarily resorted to for the collection of taxes, any statute which imposes pecuniary penalty, fine and imprisonment for a failure to pay the tax, should certainly be classed as a penal statute, and subjected to a strict construction. (Bishop, Writ. Laws, sec. 195; Sutherland, Stat. Const. 364; *Com.* v. *Standard Oil Co.*, 101 Pa. St. 150; *Am. Net Twine Co.* v. *Worthington*, 141 U. S. 468; *Rice* v. *United States*, 53 Fed. Rep. 910; Endlich, Stat. Inter., sec. 346.) That is the case with the law now under consideration. It imposes taxes not generally resting on members of the community; it declares every one engaging in the sheep business, without procuring the license therein required, to be guilty of a misdemeanor, and subjects him to a fine of from $50 to $250, or to imprisonment from 25 to 90 days; and it makes him liable in a civil action to a penalty of $25, in addition to the amount found due for the license. It seems clear that it should be classed as a penal statute, and subjected to a strict interpretation.

Being penal, the proviso exempting persons from the operation of the law should, on the other hand, receive a liberal interpretation. Mr. Bishop states the rule thus: "While the parts of a penal statute which subject to punishment or a penalty are, from their odious nature, to be construed

strictly, those which exempt from penal consequences will, because of their opposite character, receive a liberal interpretation." (Bishop, Writ. Laws, secs. 196, 226.)  To the same effect are Sutherland, Stat. Const., sec. 227; Endlich, Stat. Int., sec. 332.

It remains but to apply these doctrines to the case. · We have found that one meaning of the word " owner " is the lessee or tenant of land; the word "holder" sometimes means the same thing, or, as used here, the person in possession, actual or constructive, of real estate, which, in the absence of a showing to the contrary, a tenant is always presumed to be.  There is nothing in the act to indicate that the legislature did not intend to use " owner " in this broad sense, instead of the narrower one of him who has title in fee.  As giving the statute the broader construction will exempt persons from the penalties denounced by the act, the rules above stated require us to give it this construction.  The appellant contends that the tenant for a fixed term is only the holder of property, and that the use of the term " owner and holder" shows that the legislature meant more than that. But a tenant is more than a holder; he is, for many purposes, an owner, so both words fit him.  To our minds, the legislature intended by the use of that term, just what it has said:  That is, that for a person to be entitled to the exemption he must be both an owner and holder.  It was not to be sufficient for him to be the owner of land which he had leased to another, or from the possession of which he was excluded by the adverse holding of another; nor was the mere holding of land without color of title to be sufficient. By this construction both words are given an appropriate meaning, and neither are used tautologically.

In conclusion, it must, at least, be admitted that the meaning of the term " owner and holder " is not clear, and is a matter of reasonable doubt.  Such being the case, we cannot do better than to quote from Endlich, Stat. Int., sec. 330, where the learned author says:  " The effect of the rule of strict construction might almost be summed up in the remark that where an equivocal word or ambiguous sentence leaves a reasonable doubt of its meaning which the canons of interpretation fail to solve, the benefit of the doubt should be

given to the subject, and against the legislature which has failed to explain itself." And again from the opinion of the the court in *Hines* v. *Railroad Co.*, 95 N. C. 437, that the "plain meaning [of words and phraseology] must not be extended by inference, and when there is reasonable doubt as to their true meaning, the court will not give them such interpretation as to impose the penalty." Presumptively, the conclusion to which these principles lead us is in accordance with the legislative intent, for we must suppose the lawmakers to have been in the possession of such common rules of statutory construction as these, and that, had they not intended the act to be thus construed, they would have used the term owners in fee; or some equivalent term; and it may be added that if it is not in accordance with that intention, it will be very easy to change the law so as to leave no doubt concerning it.

The judgment is affirmed.