DAVID ARTHUR BRADVICA, Appellant, v.
THE STATE OF NEVADA, Respondent.

No. 18112

August 31, 1988                                            760 P.2d 139

*Terri Steik Roeser,* State Public Defender, and *Michael K. Powell,* Chief Appellate Deputy, Carson City, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Brent Kolvet,* District Attorney, and *Michael Gibbons,* Deputy District Attorney, Douglas County, for Respondent.

## OPINION

*Per Curiam:*

David Bradvica was stopped for a traffic violation on November 12, 1986. The officer asked to see Bradvica's driver's license, and Bradvica replied that it had been recently lost with his wallet. In attempting to verify Bradvica's statement that he had an Arizona license, the officer was informed that Bradvica was licensed not in Arizona or Nevada but, rather, in California. Furthermore, the California license had been suspended. Bradvica was then arrested for driving without a valid license and for the traffic violation. The pat search of Bradvica disclosed no weapons, and he was taken to jail. At the jail, he was searched more thoroughly. His wallet and license were found along with a small knife which is the subject of this appeal. Bradvica was charged and convicted for carrying a concealed, dangerous knife (NRS 202.350(1)(b)(2)) and possession of an illegal weapon (NRS 202.350(1)(a)).

The knife Bradvica carried is a small pocket knife. The total length of the knife with the blade open is 5⅜ inches. The cutting

portion, which springs open from the handle by pressing a switch, measures 2⁵/₁₆ inches from tip to handle and less than two inches along the sharpened edge.

NRS 202.350(1)(b)(2) prohibits the concealed possession of a dirk, dagger, or "dangerous knife." The jury found that the knife which Bradvica was carrying was such a "dangerous knife." Bradvica contends that this term is unconstitutionally vague and ambiguous. We agree.

Penal statutes are subject to strict construction, Sheriff v. Smith, 91 Nev. 729, 542, P.2d 440 (1975), and "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process," Sheriff v. Luqman, 101 Nev. 149, 155, 697 P.2d 107, 111 (1985) (quoting Connally v. General Construction Co., 269 U.S. 385, 391 (1926)).

This statute prohibits the mere concealed possession of a "dangerous knife" without regard to the circumstances in which the knife was being used; therefore, guilt depends solely upon the fact finder's construction of the term.

In Huebner v. State, 103 Nev. 29, 731 P.2d 1330 (1987), the defendant was convicted for carrying a concealed dirk, dagger or dangerous knife. The defendant was carrying a "springloaded, pointed implement designed for stabbing, [that] was cleverly concealed within the shell of what appeared to be a ball-point pen." 103 Nev. at 30, 731 P.2d at 1332. The defendant admitted that the object was a weapon. Citing an established dictionary definition, we suggested that such a weapon could be considered a dagger. 103 Nev. at 30 n.1, 731 P.2d at 1331 n.1.

We initially observe that the Supreme Court of California has held that an ordinary pocket knife is not a dirk or dagger as a matter of law. Relevant factors to consider are handguards and a blade which locks in place. People v. Bain, 489 P.2d 564 (Cal. 1971). Although the blade of Bradvica's knife would lock into place, it had no handguards that would enable the user to stab without substantial risk to his hand. Other than the fact that the blade locks into an open position, this knife no more resembles a dagger or stabbing weapon than a penknife carried by a Boy Scout.

The conviction cannot stand upon the term "dangerous knife" either. The term is so clearly vague that individuals must guess as to its meaning without any objective, guiding factors. Such a term cannot support the imposition of criminal liability.

We next consider Bradvica's conviction for carrying an illegal weapon, a switchblade. NRS 202.350(5)(b) defines a switchblade knife as a knife with a spring-blade or snap-blade two or more inches long that is released automatically by a release mechanism.

Bradvica's knife released the "blade" by the press of a button. That fact is admitted. The knife measured $2^5/16$ inches from tip to handle, but the sharpened edge of the knife measured less than two inches. Bradvica contends that the meaning of the term "blade" must be strictly construed since it is not defined within the statute.

Long ago in State v. Wheeler, 23 Nev. 143, 44 P. 430 (1896), this court clearly explained:

> The effect of the rule of strict construction might almost be summed up in the remark that where an equivocal word or ambiguous sentence leaves a reasonable doubt of its meaning which the canons of interpretation fail to solve, the benefit of the doubt should be given to the subject, and against the legislature which has failed to explain itself.

*Wheeler,* 23 Nev. at 153-154 (quoting Endlich, Stat. Int., sec. 330). The purpose of this rule is to impose criminal liability only in cases where the accused had adequate notice of the act forbidden.

The statute fails to define the "blade." However, Webster's Third New International Dictionary defines blade, in part, as "the cutting part of an instrument. . . ." Thus, Bradvica's contention has merit.

Strictly construing the statute, we hold that the "blade" of such a knife is that portion which is customarily sharpened from the tip of the knife to the tang, or the unsharpened extension of the blade which forms the hinge connecting the blade to the handle. So defined, the "blade" of Bradvica's knife measured $1^{15}/16$ inches. Measuring under 2 inches, the knife was not a switchblade as defined by the legislature.

Therefore, in accordance with the views expressed herein, we reverse the judgment of conviction.