SUSAN LYNN ANGLE, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 27450

July 15, 1997                                        942 P.2d 177

[Rehearing denied December 15, 1997]

*Harry R. Gensler,* Public Defender, and *Sharon Dockter,* Deputy Public Defender, Nye County, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Robert S. Beckett,* District Attorney, and *Kirk Vitto,* Deputy District Attorney, Nye County, for Respondent.

---

# OPINION

*Per Curiam:*

Appellant Susan Angle was arrested for driving under the influence of alcohol. Angle argued that she was not drunk, but rather that she had taken allergy medication, had consumed one beer, and that the combination of these two products gave the arresting officer the erroneous impression that she was intoxicated. At the conclusion of trial, Angle was convicted of driving under the influence of alcohol.

On appeal, Angle alleges that the prosecutor improperly commented on her post-arrest silence during closing arguments, that the district judge incorrectly refused to redact a portion of a videotape of Angle's booking at the police station, and that these errors require a reversal of her conviction. We agree and remand this matter to the district court for a new trial.

## FACTS

On April 26, 1994, Nye County Deputy Sheriff Gene Elbert was traveling westbound when he saw an approaching eastbound car cross the center line of the roadway and then drift back into the eastbound lane. Elbert made a U-turn and began to follow the car. He again saw the car drift across the center line. As Elbert got closer to the suspect vehicle, the vehicle drifted back across the eastbound lane and onto the gravel shoulder. Elbert then activated his flashing red and blue lights and stopped the vehicle.

Elbert approached the vehicle; Angle produced a Wyoming driver's license but no registration for the car. The car belonged to Angle's father, who Angle lived with in Pahrump. Elbert testified that Angle slightly smelled of alcohol, her eyes were glassy, she had a blank stare, and her speech was slow and pronounced. Elbert stated that when he asked Angle if she had been drinking, Angle responded that she had consumed one beer at Our Bar, a local saloon located about five miles from where Elbert stopped Angle. Elbert asked Angle to get out of the car. When Angle complied, Elbert noticed that she was unsteady on her feet and used her car for support.

Elbert administered a field sobriety test to Angle. Elbert administered the "horizontal gaze nystagmus" test. He also asked Angle to count backwards from 89 to 69; to touch the tip of

her thumb to the tip of each finger, starting with the pinky, and to count from one to four as she touched each finger; to close her eyes, tilt her head back, and touch her finger to her nose; and to recite the alphabet. Elbert testified that Angle failed every test except for the alphabet test.

Angle refused to submit to a preliminary breath test, and Elbert stated that based on his training, expertise, and observations, it was his opinion that Angle was under the influence of alcohol. Elbert arrested Angle and took her to the police station's booking area, and Angle again refused to submit to a breath test (blood tests were not available at the booking facility).

Dana Elbert, Deputy Elbert's wife, who at the time also worked for the Nye County Sheriff's Department, was riding along in the car with Elbert on the night of Angle's arrest. She stated that she was trained in the administration of field sobriety tests, that she observed Elbert administer the test to Angle, and that Elbert had administered the test correctly. She also stated that she had had close personal contact with Angle later on the evening of Angle's arrest and that based on her training and experience, she believed that Angle was under the influence of alcohol.

Former Deputy Sheriff Christopher Royer was the officer that conducted Angle's booking. He stated that he had previously met Angle through a friend and testified that when he came into contact with Angle, he noticed that she strongly smelled of alcohol, that her speech was slow and stuttered, and that she was very unsteady and used the wall and counter for support. He testified that he knew Angle's speech pattern from previously meeting her and that her speech was different at the booking than it was at other times. Finally, he testified that Angle admitted to him that she had consumed a few beers that night and knew that she should not have been driving. Angle denied making this statement.

Angle testified that she suffered from severe allergies at the time of the arrest, and as a result of those allergies, she coughed and sneezed constantly, had a runny nose and watery eyes, and got headaches. She also stated that she did not drink during that day of her arrest, but that she did have one beer at a softball game at approximately 7:00 p.m. Angle further testified that the wind was blowing at the softball field, exacerbating her allergies, and that even though she had taken her allergy medicine earlier, she was feeling so bad that she needed to go home. Angle's friend, Deborah Davee, testified that she saw Angle at the softball game and that Angle appeared sober. Davee also testified that Angle appeared to have a cold, that her eyes had been red and watering, that she had a runny nose, and that she had coughed periodically.

Angle stated that after she was detained by Elbert, she tried to

comply with Elbert's instructions and told Elbert that she was suffering from allergies. She also stated that Elbert's spotlight was shining directly into her eyes, rendering her unable to see clearly, and that this inability to see, combined with her bad knee and her having taken allergy medicine, impaired her ability to take the field sobriety test. She stated that she had refused to take the breath test after she was arrested because she believed the test was inaccurate.

At trial, Angle requested to introduce into evidence a videotape of her booking at the police station. The videotape showed Angle getting out of the police car, walking through a hallway and into the booking room, and talking to Elbert and Royer; however, during part of the videotape, Angle admitted that she had been convicted of driving under the influence of alcohol before. Angle's counsel wished to redact that portion of the videotape containing the admission, but the district court refused, stating that if the videotape was entered into evidence, it would be shown in its entirety, and that a limiting instruction would be given to the jury. Angle chose not to admit the videotape into evidence. Additionally, during closing arguments, the prosecutor stated that Angle had ample opportunity to tell the arresting officer of her allergy condition after her arrest but failed to do so.

At the conclusion of a jury trial, Angle was convicted of driving under the influence of alcohol and was sentenced to one year in prison and a $2,000 fine.[1] This sentence was based on the fact that Angle had been convicted three previous times of misdemeanor counts of driving under the influence of alcohol (twice in Wyoming, once in Utah). Angle now appeals her conviction.

## DISCUSSION

We conclude that the district court erred in refusing to redact from the videotape mention of Angle's prior DUI conviction and further that the prosecutor improperly commented on Angle's post-arrest silence. The combination of these errors constituted reversible error.

*The district court erred in failing to redact a portion of the videotape of Angle's booking*

At trial, Angle wished to admit into evidence the redacted version of the videotape of her booking. Angle's counsel argued

---

[1]Presumably, Angle has completed her sentence. Even so, this appeal is not moot because Angle's conviction for driving under the influence of alcohol could affect any sentences she may receive in the future. Arterburn v. State, 111 Nev. 1121, 1124 n.1, 901 P.2d 668, 670 n.1 (1995).

that if the prosecution had wanted to introduce the tape, it would not be permitted to include the portion containing the admission; therefore, Angle's counsel stated that Angle should be afforded the same privilege. After the district judge refused to admit the redacted version of the videotape, and instead decided that the entire tape would be admitted into evidence, but that he would give the jury a limiting instruction that Angle's admission of having previously been convicted of driving under the influence of alcohol was not to be used for a finding of guilt in this case, Angle's counsel chose not to enter the tape into evidence. We conclude that the district court's refusal to redact the portion of the videotape referring to Angle's prior conviction was error.

The videotape of Angle's booking was relevant evidence because it showed Angle walking and talking for a brief time, and a jury may have found this tape useful to determine whether Angle was intoxicated. NRS 48.015. Furthermore, Angle's admission that she had previously been convicted for driving under the influence of alcohol was not relevant, because previous convictions were not an element of the instant crime, and its prejudicial value substantially outweighed its probative value. NRS 48.035(1). The challenged portions of the videotape could have been easily redacted, and the district court's decision to permit mention of the prior conviction but then give a limiting instruction would have been insufficient in this case to remove the prejudicial impact of the admission.

*The deputy district attorney improperly commented on Angle's post-arrest silence*

We also conclude that the prosecutor improperly commented on Angle's post-arrest silence during closing arguments. During closing arguments, the prosecutor made the following statement:

> Defendant had time in the field, she had time in the car, she had time on the way [to the police station], she had time while she was [at the police station], to explain all the things that she has presented to you today. She didn't do that. Not one of them.
>
> Deputy Elbert would listen to those. I think it's pretty clear that you would agree that Deputy Elbert would have listened to what she said and he would have given them weight accordingly.

Angle's counsel objected to this line of argument, stating that the prosecution was improperly commenting on Angle's post-arrest silence. The district judge overruled the objection.

"It is well settled that the prosecution is forbidden at trial to comment upon an accused's election to remain silent following his arrest and after he has been advised of his rights as required by Miranda v. Arizona . . . ." McGee v. State, 102 Nev. 458, 461, 725 P.2d 1215, 1217 (1986). Furthermore, "a prosecutor also cannot use post-arrest, pre-*Miranda* silence to impeach a defendant." Morris v. State, 112 Nev. 260, 263, 913 P.2d 1264, 1267 (1996) (citing Coleman v. State, 111 Nev. 657, 895 P.2d 653 (1995)).

It is clear that the prosecutor improperly commented on Angle's post-arrest silence. The testimony demonstrated that after Angle failed the field sobriety test, Elbert arrested her, placed her in his police car, and transported her to the station house to book her. The prosecutor commented that while Angle was in the police car and while she was being booked, she could have explained to the officers the things that she had testified to at trial. Such remarks were an obvious comment on Angle's post-arrest silence.[2]

*The combination of these two errors warrants reversal of Angle's conviction and remand to the district court for a new trial*

The prosecutor's comment on Angle's post-arrest silence was more than a passing reference, but this error would nevertheless be harmless beyond a reasonable doubt if there was overwhelming evidence of Angle's guilt. *Morris,* 112 Nev. at 264, 913 P.2d at 1267. However, we cannot determine that such overwhelming evidence existed in light of the district court's erroneous refusal to redact the videotape, which prevented Angle from presenting and the jury from considering relevant evidence.

Elbert, his wife Dana, and Royer all testified that in their professional opinion, Angle appeared to be intoxicated. However, the videotape briefly exhibited Angle's motor functions and speech patterns, and had the videotape been redacted and played, the jury might have come to a different conclusion regarding Angle's intoxication. Of course, the jurors might have still found Angle guilty even after seeing the videotape, but we cannot conclude beyond a reasonable doubt that they would have done so. Therefore, Angle's conviction must be reversed and the case remanded to the district court for a new trial. Because we have

---

[2]However, the prosecutor's remark on Angle's silence during the field sobriety test was a proper comment because Angle had not yet been arrested while she was taking the test.

reversed Angle's conviction, we need not consider her remaining issues on appeal.

## CONCLUSION

The district court erred in refusing to redact a portion of the videotape of Angle's booking, and the prosecutor improperly commented on Angle's post-arrest silence. We conclude that there was not overwhelming evidence of Angle's guilt, and we reverse Angle's conviction and remand the case to the district court for a new trial.[3]

---

[3]The Honorable A. William Maupin, Justice, did not participate in the decision of this matter.