OPINION
 

 Per Curiam:
 

 FACTS
 

 The facts underlying the instant prosecution are unusual. Prior to the charged incident, appellant Samuel Knight had confronted Matthew Minton, a resident of an apartment in Las Vegas, on at least two prior occasions. Appellant complained to Minton that someone in the apartment had taken his car.
 

 On August 22, 1997, at approximately 8:30 a.m., appellant knocked on the door of the apartment where Minton was staying. Jenise Landolfa, another resident of the apartment, went to the door. Landolfa saw appellant through the peephole and told him that if he did not leave, she would call the police. Appellant yelled at Landolfa and proceeded to kick in the door. Appellant was carrying a steak knife and a fork.
 
 [1]
 
 Landolfa later testified that appellant cut her hand with the knife.
 

 Appellant entered the apartment. A guest in the apartment, Hiram Figgures, fled through a window. Appellant pursued Figgures to a convenience store.
 

 Police apprehended appellant at the store. At that time, police found the fork and knife in appellant’s back pockets. Appellant’s shirt fully concealed both the knife and the fork from view. An officer observed that the knife appeared to have some food on it and that it looked like it had been used for “cutting steak or something like that.”
 

 The State charged appellant, by criminal complaint, with one count each of invasion of the home, battery with the use of a deadly weapon, and carrying a concealed weapon. The State specifically alleged that appellant carried “concealed upon his person, a deadly weapon, to-wit: a knife.” The charge of battery with the use of a deadly weapon was dismissed following the preliminary hearing, but appellant was bound over on the other charges. Prior to trial, appellant obtained leave from the court to represent himself. Standby counsel from the public defender’s office assisted appellant in subsequent proceedings.
 

 Following the trial, the jury found appellant guilty of one count
 
 *143
 
 of trespass, a misdemeanor and lesser offense to invasion of the home. The jury also found appellant guilty of carrying a concealed weapon, a gross misdemeanor. On February 3, 1998, the district court entered the judgment of conviction. The court sentenced appellant to serve six months in the Clark County Detention Center for trespass and one year in the detention center for carrying a concealed weapon. This appeal followed.
 

 DISCUSSION
 

 State’s motion to dismiss
 

 On December 16, 1998, the State filed a motion to dismiss this appeal on the ground that expiration of appellant’s sentence had rendered the matter moot. In response, appellant conceded that he had expired his sentence but opposed dismissal of this appeal. This court deferred its decision on the State’s motion until the completion of briefing. We now rule that the instant appeal is not moot. Accordingly, we deny the State’s motion to dismiss.
 

 This court has concluded that an appeal in a misdemeanor or gross misdemeanor case was rendered moot by satisfaction of a fine or completion of a defendant’s sentence. Bryan v. State, 78 Nev. 38, 368 P.2d 672 (1962); State v. Cohen, 45 Nev. 266, 201 P. 1027 (1921); see
 
 also
 
 State v. Pray, 30 Nev. 206, 94 P 218 (1908). This court concluded that no effective relief would accrue from reversal of the defendant’s conviction if the fine had been paid or the sentence served.
 
 See Bryan, 78
 
 Nev. at 39-40, 368 P.2d at 672;
 
 Cohen,
 
 45 Nev. at 272-73; 201 P. at 1029;
 
 Pray,
 
 30 Nev. at 220, 94 R at 220.
 

 More recently, however, this court has recognized that criminal convictions carry with them certain collateral consequences.
 
 See
 
 Hughes v. State, 112 Nev. 84, 910 P.2d 254 (1996);
 
 see also
 
 Angle v. State, 113 Nev. 757, 761 n.1, 942 P.2d 177, 180 n.1 (1997); Arterburn v. State, 111 Nev. 1121, 1124 n.l, 901 P2d 668, 670 n.1 (1995). For example, even a gross misdemeanor conviction may impact penalty considerations in a subsequent criminal action.
 
 Hughes,
 
 112 Nev. at 87, 910 P.2d at 255. Our recent holdings are consistent with the decisions of the United States Supreme Court which have recognized that it is an “obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences.” Sibron v. New York, 392 U.S. 40, 55 (1968) (quoted in Spencer v. Kemna, 523 U.S. 1, 12 (1998)).
 

 Consequently, we expressly overrule
 
 Bryan, Cohen,
 
 and
 
 Pray
 
 to the extent that they hold that satisfaction of a fine or completion of a sentence renders a timely appeal from a criminal con
 
 *144
 
 viction moot. We recognize, however, that completion of a defendant’s sentence may render a challenge to the sentence itself moot.
 
 See generally
 
 Johnson v. Director, Dep’t Prisons, 105 Nev. 314, 316, 774 P.2d 1047, 1049 (1989) (stating that expiration of a defendant’s sentence rendered any question concerning computation of the sentence moot). We now turn to the merits of this appeal.
 

 Prosecutorial misconduct
 

 First, appellant claims that the prosecutor improperly commented on appellant’s failure to testify. As previously noted, appellant represented himself at trial. In closing argument, the prosecutor lodged several objections to appellant’s attempts to make factual assertions. On one occasion, the prosecutor stated, “Objection once again, he’s testifying. If he’s going to testify, I would like him to take the stand and be put under oath, and I have some questions I’d like to ask him.” On this particular occasion, the court overruled the objection on the ground that appellant was explaining his theory of the case. Appellant complains that the prosecutor’s objection was improper.
 

 Appellant further complains that the prosecutor made additional improper comments during summation. The prosecutor, told the jury that they should consider the testimony of the witnesses because each witness was placed under oath and subjected to cross-examination and possible impeachment. The prosecutor explained that this was to ensure reliable testimony. The prosecutor cautioned the jury that what appellant said in his opening statement and in closing argument was not evidence because appellant was acting in his capacity as counsel.
 

 Considered in context, the prosecutor’s comments in the instant case do not warrant reversal. The prosecutor did not directly comment on appellant’s failure to testify.
 

 When a reference is indirect, the test for determining whether prosecutorial comment constitutes a constitutionally impermissible reference to a defendant’s failure to testify is whether ‘ ‘the language used was manifestly intended to be or was of such a character that the jury would naturally and necessarily take it to be comment on the defendant’s failure to testify.”
 

 Harkness v. State, 107 Nev. 800, 803, 820 P.2d 759, 761 (1991) (quoting United States v. Lyon, 397 F.2d 505, 509 (7th Cir. 1968)). A prosecutor’s comments should be viewed in context, and “a criminal conviction is not to be lightly overturned on the
 
 *145
 
 basis of a prosecutor’s comments standing alone . . . .” United States v. Young, 470 U.S. 1, 11 (1985). Here, the prosecutor’s comments are best understood as an attempt to dissuade the jury from relying on appellant’s factual assertions, and to instead focus the jury’s deliberation on the evidence adduced at the trial. Under these circumstances, the jury could not “naturally and necessarily” consider the prosecutor’s comments as being directed at appellant’s failure to testify.
 

 Carrying a concealed weapon
 

 Second, appellant claims that there was insufficient evidence to convict him of carrying a concealed weapon, pursuant to NRS 202.350(l)(b). The statute prohibits an individual from carrying, “concealed upon his person any: (1) Explosive substance, other than ammunition or any components thereof; (2) Dirk, dagger or machete; (3) Pistol, revolver or other firearm, or other dangerous or deadly weapon; or (4) Knife which is made an integral part of a belt buckle.”
 
 [2]
 
 Appellant asserts that a steak knife is not a weapon pursuant to the statute.
 
 [3]
 

 In respondent’s appendix, the State includes color photographs of the knife at issue. It is a common steak knife with a serrated blade. The knife is photographed next to a ruler. It appears that the handle of the knife is approximately four inches in length with a blade of roughly equivalent length.
 

 Preliminarily, we note that the jury was not properly instructed. Jury Instruction No. 6 reads: “Every person found to be carrying a dirk, dagger
 
 or dangerous knife
 
 concealed on his person is guilty of the crime of Carrying a Concealed Weapon.” (Emphasis added.) Prior to 1995, NRS 202.350(l)(b)(2) prohibited concealment of a “[d]irk, dagger or dangerous knife,” but this court held that the term “dangerous knife” was unconstitutionally vague. Bradvica v. State, 104 Nev. 475, 477, 760 P.2d 139, 141 (1988). In 1995, the legislature replaced the term “dangerous knife” with “machete.” 1995 Nev. Stat., ch. 713, § 13, at 2726.
 

 Appellant did not object to the jury instruction in the district court or on appeal. Nonetheless, the instruction constitutes plain error readily apparent from our review of the record.
 
 See
 
 Patterson v. State, 111 Nev. 1525, 1530, 907 P.2d 984, 987 (1995). We further note, however, that reversal is not warranted if
 
 *146
 
 this error is harmless.
 
 See
 
 Donald v. State, 112 Nev. 348, 349-50, 913 P.2d 655, 656 (1996) (holding that a jury instruction that expanded the definition of an offense beyond the statutory definition was harmless beyond a reasonable doubt);
 
 see also
 
 Neder v. United States, 527 U.S. 1 (1999); Johnson v. United States, 520 U.S. 461, 469 (1997). Accordingly, we consider both the sufficiency of the evidence and the issue of whether the erroneous jury instruction was harmless, in view of the relevant statutory provisions.
 

 We conclude that the weapons specifically enumerated in NRS 202.350(l)(b) are all weapons for purposes of the statute as a matter of law. The bladed weapons enumerated are a dirk, dagger, machete, and a knife made an integral part of a belt buckle. Only the first two could arguably apply here.
 

 Our legislature has not provided its own definition of the terms “dirk” or “dagger.” This court has stated, however, that “a dagger is a short weapon used for thrusting and stabbing and that stabbing is using a pointed weapon to wound or kill.” Huebner v. State, 103 Nev. 29, 30 n.1, 731 P.2d 1330, 1331-32 n.1 (1987) (citing The Oxford Dictionary of English Etymology (1983)). Webster’s Third New International Dictionary (1976) defines a dirk as “a long straight-bladed dagger.” Alternately, a dirk is described as “a short sword formerly worn by British junior naval officers.”
 
 Id.
 
 Thus, in most cases a dirk appears to be simply a type of dagger.
 

 “Relevant factors to consider” when determining whether a knife is a dirk or dagger include whether the knife has handguards and a blade that locks in place. Bradvica v. State, 104 Nev. 475, 477, 760 P.2d 139, 141 (1988). Thus, this court held that a small pocket knife with a 25/16-inch spring-loaded blade with less than 2 inches along the sharpened edge was not a dirk or dagger for purposes of NRS 202.350(l)(b)(2).
 
 Id.
 
 at 476-77, 760 P.2d at 140-41.
 

 A steak knife is a “pointed” implement that may be employed as a weapon “for thrusting and stabbing.” Nevertheless, a steak knife is not primarily designed or fitted for use as a weapon. A steak knife does not have handguards to prevent the hand from slipping onto the blade if it is used as a stabbing implement. Further, we doubt that the legislature sought to bar the concealment of common household items when it enacted the statutory provisions prohibiting concealment of a dirk or dagger. Penal statutes should be strictly construed and any reasonable doubts
 
 *147
 
 resolved in favor of the accused.
 
 See
 
 Sheriff v. Hanks, 91 Nev. 57, 60, 530 P.2d 1191, 1193 (1975). For these reasons, we conclude that the steak knife at issue here is not a dirk or dagger as a matter of law.
 

 This does not end our inquiry. NRS 202.350(l)(b)(3) also prohibits carrying a concealed “[p]istol, revolver or other firearm,
 
 or other dangerous or deadly weapon.”
 
 (Emphasis added.) Neither appellant nor the State makes any argument concerning this provision, nor does it appear that the jury was instructed to consider whether the steak knife was a “dangerous or deadly weapon.’ ’ This court has not spoken on the issue of how this language should be interpreted.
 

 Having considered the issue, we conclude that the determination of whether a common steak knife is a dangerous or deadly weapon is a question of fact for the jury. Our approach is consistent with the approach employed by the Missouri Supreme Court in State v. Baldwin, 571 S.W.2d 236 (Mo. 1978). The court considered a statute that prohibited a person from carrying certain concealed weapons and “ ‘other similar deadly weapons.’ ”
 
 Id.
 
 at 241. The court explained,
 

 It is obvious that there are many useful and practical items which are carried by persons for peaceful purposes. They are not normally thought of as dangerous and deadly weapons. Pocket knives, hammers, screwdrivers, wrenches, cutting tools and letter openers are examples of such articles. Other items such as butcher knives, steak knives, and ice picks, though not usually carried concealed on the person, are useful utensils utilized for peaceful purposes. Such everyday instruments become dangerous or deadly only when they are used or carried for use as a weapon. The determination of whether in a particular case such instrument is dangerous and deadly would depend on a variety of factors—the nature of the instrument itself, the circumstances under which it is carried, including time, place, and situation in which defendant is found in possession, the manner in which it is carried, the particular person carrying it, and perhaps other factors such as possible peaceful uses therefor which the possessor might have.
 

 Id.
 

 Consistent with this approach, we conclude that the error in the jury instruction was harmless, given the particular facts of this case.
 
 See
 
 Donald v. State, 112 Nev. 348, 350, 913 P.2d 655, 656
 
 *148
 
 (1996). This is not a case involving legitimate concealment of a knife for peaceful purposes. The attendant circumstances, including the time, place, and situation in which appellant was found in possession of the knife, unequivocally demonstrate that appellant was carrying the knife as a weapon.
 

 Critical to our determination are the events that occurred shortly before appellant’s apprehension by police. Given that the jury found appellant guilty of trespass, it is apparent that the jury believed witness testimony that appellant improperly entered a Las Vegas apartment without permission. Further witness testimony established that at that time appellant behaved in an aggressive and threatening manner, while carrying the steak knife at issue.
 
 [4]
 

 CONCLUSION
 

 We affirm appellant’s conviction.
 

 [1]
 

 The fork was described by one witness as a barbecue fork, and in a police report as a large two-pronged fork.
 

 [2]
 

 Although NRS 202.350 has been amended since commission of the instant offense, the quoted provisions of NRS 202.350(l)(b) have not been changed.
 

 [3]
 

 As previously noted, appellant was also found in possession of a fork. Appellant was, however, only charged with carrying a concealed knife.
 

 [4]
 

 We reach only the issue of how NRS 202.350(l)(b) should be interpreted. We express no opinion concerning what constitutes a deadly weapon pursuant to the current provisions of NRS 193.165, the deadly weapon enhancement statute.