(174 P.3d 899)
No. 97,003

STATE OF KANSAS, *Appellee*, v. DAVID C. MOORE, *Appellant*.

Opinion filed January 18, 2008.

*Randall L. Hodgkinson* and *Melissa M. Schoen,* legal intern, of Kansas Appellate Defender Office, for the appellant.

*Kristi L. Barton*, assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Paul J. Morrison,* attorney general, for the appellee.

Before BUSER, P.J., BUKATY, S.J., and KNUDSON, S.J.

BUKATY, J.: David C. Moore was convicted of an aggravated weapons violation under K.S.A. 21-4202 and K.S.A. 2006 Supp. 21-4201(a)(2) for carrying a "dangerous knife" concealed on his person. In this direct appeal, he raises three alternative issues. He first argues the knife in question was a "pocket knife" under the statute and not a prohibited item. He next urges that the term "dangerous knife" is unconstitutionally vague. Finally, he contends the district court erred in determining the knife was dangerous. We find against Moore on all issues and affirm.

Wichita police stopped Moore for a traffic infraction and arrested him for a suspended driver's license and outstanding warrants. Officers then searched Moore and found on his person an item in his back left pocket that was both a hair comb and a knife with a 3.5-inch serrated blade. The State specifically charged Moore with the aggravated weapons violation for carrying a concealed dangerous knife within 5 years of his release from imprisonment for a felony.

Moore filed a motion to dismiss, arguing that the knife he carried did not fit within the definition of a dangerous knife under K.S.A. 2006 Supp. 21-4201(a)(2). The district court denied the motion and found there was a factual question as to whether the knife was a dangerous knife or a dangerous weapon under the statute.

The parties submitted the case to the district court on stipulated facts. They stipulated that Moore was carrying the knife concealed on his person and that he had been convicted of a person felony

that had not been expunged or pardoned. The sole issue then before the court boiled down to whether the knife was a dangerous knife. After viewing the knife along with a detective's affidavit regarding the arrest plus the journal entry from Moore's previous conviction, the district court heard argument from the parties. It then found that the knife was indeed a dangerous knife and that Moore was guilty of the aggravated weapons violation. Later the court sentenced him to 12 months' probation, with an underlying prison term of 9 months.

The portions of K.S.A. 2006 Supp. 21-4201 relevant to this appeal read as follows:

"(a) Criminal use of weapons is knowingly:

. . . .

(2) carrying concealed on one's person, or possessing with intent to use the same unlawfully against another, a dagger, dirk, billy, blackjack, slungshot, dangerous knife, straight-edged razor, stiletto or any other dangerous or deadly weapon or instrument of like character, except that an ordinary pocket knife with no blade more than four inches in length shall not be construed to be a dangerous knife, or a dangerous or deadly weapon or instrument."

On appeal, Moore first argues that the district court should have found as a matter of law that his knife was a pocket knife under the statutory exception and therefore not a dangerous knife. The State argues Moore did not make this argument to the court and is precluded from doing so now. It urges that he only argued the knife was not dangerous.

We note that in issuing its decision, however, the district court did mention that Moore's knife was not a pocket knife that was exempt from the proscriptions in the statute. While generally issues not raised before the trial court cannot be raised on appeal, there are several exceptions to the rule. One of those is the situation where the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case. *State v. Shopteese*, 283 Kan. 331, 339, 153 P.3d 1208 (2007).

Here, there are no disputed factual issues. There is no dispute about the description of the knife, that Moore was carrying it concealed on his person, or that he had previously been convicted of

a felony. The knife is part of the record and we have viewed it. The only question is whether such a knife amounts to an ordinary pocket knife. Essentially, the question requires statutory interpretation, *i.e.*, the meaning of that term. This is a question of law over which an appellate court has unlimited review. *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006). We will address the argument on that basis.

Our appellate courts have stated the guidelines for statutory construction on many occasions. The primary rule is that the intent of the legislature governs if that intent can be ascertained. We presume the legislature expressed its intent through the statutory language. Ordinary words are given their ordinary meanings, without adding something that is not readily found in the statute or eliminating that which is readily found therein. *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 77, 150 P.3d 892 (2007); *State v. McElroy*, 281 Kan. 256, 262, 130 P.3d 100 (2006).

Generally, criminal statutes must be strictly construed in favor of the accused, and any reasonable doubt as to the meaning of the statute is decided in favor of the accused. Nevertheless, the rule of strict construction is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent. *State v. Snow*, 282 Kan. 323, 340-41, 144 P.3d 729 (2006).

Here, the statute does not define the term "ordinary pocket knife," nor does the legislative history of the statute shed any further light on the meaning. Webster's Third New International Dictionary 1747 (6th ed. 1993) defines "pocketknife" as "a knife with a blade folding into the handle to fit it for being carried in the pocket." "Ordinary," as used here, is defined as "occurring or encountered in the usual course of events: not uncommon or exceptional: not remarkable: ROUTINE, NORMAL." Webster's Third New International Dictionary 1589 (6th ed. 1993).

Other states have set forth these or similar definitions in construing similar statutes. See *In re Luke W.*, 88 Cal. App. 4th 650, 655-56, 105 Cal. Rptr. 2d 905 (2001) (A "pocketknife is most commonly thought of as one in which the blade folds into its attached handle."); *State v. Harmon*, 800 A.2d 1289, 1292 (Del. 2002) (Del-

aware statutes define " 'ordinary pocketknife' " as " 'a folding knife having a blade not more than 3 inches in length.' "); *L.B. v. State*, 700 So. 2d 370, 372 (Fla. 1997) (A " 'common pocketknife' " is a " 'type of knife occurring frequently in the community which has a blade that folds into the handle and that can be carried in one's pocket.' ").

The knife in this case has a 3.5-inch straight serrated blade, similar to a steak knife. The blade is concealed in a comb that is about 7 inches long. The blade does not fold into the comb; it is sheathed in the comb. The handle of the comb also serves as the handle of the knife. While a person certainly can carry this item in his or her pocket, the dictionary definitions and case law cited above set out more characteristics than this for a pocket knife. The knife here has no blade that folds into the handle. It certainly is not the type of knife one encounters in the community commonly or routinely.

The district court did not err in concluding this knife was not an ordinary pocket knife under the statute that would be legal to carry concealed on one's person.

Moore next argues that the term "dangerous knife" in K.S.A. 2006 Supp. 21-4201(a)(2) is unconstitutionally vague and, therefore, his conviction under the statute violated his due process rights under the Fourteenth Amendment to the United States Constitution.

The State responds again that Moore failed to raise this issue below and is now precluded from raising it on appeal. As to the merits, it urges that the term is not vague when read in the context of the statute.

As we stated previously, issues not raised below may be considered on appeal if the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case. Additionally, another exception exists where consideration of the theory is necessary to serve the ends of justice or to prevent the denial of fundamental rights. *Shopteese*, 283 Kan. at 339. Because this issue falls within these two exceptions, we will address the merits of Moore's argument.

In reviewing a constitutional challenge to a statute, we presume the statute is constitutional and resolve all doubts in favor of the

statute's validity. A court has a duty to uphold a statute under attack rather than defeat it, unless it clearly appears that the statute violates the Constitution. We will construe a statute as constitutionally valid if there is any reasonable way to do so, and we will not invalidate it unless the constitutional infringement is clear beyond a reasonable doubt. *State v. Brown*, 280 Kan. 898, 899, 127 P.3d 257 (2006).

A two-part test exists to determine whether a statute is unconstitutionally vague. First, the court determines whether the statute conveys a sufficiently definite warning of the proscribed conduct considering common understanding and practice. Second, the court determines whether the statute adequately guards against arbitrary and discriminatory enforcement. *State v. Rupnick*, 280 Kan. 720, 737, 125 P.3d 541 (2005).

" 'A statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process.' Kansas has long held, however, that a statute will not be declared void for vagueness and uncertainty where it employs words commonly used, previously judicially defined, or having a settled meaning in law. [Citation omitted.]" *City of Wichita v. Hackett*, 275 Kan. 848, 853-54, 69 P.3d 621 (2003).

Here, neither the statute nor Kansas appellate courts have provided a specific definition of "dangerous knife." However, the language of the statute suggests that a dangerous knife is a type of "dangerous weapon or deadly weapon": "[C]arrying concealed on one's person . . . [a] dangerous knife . . . or any *other* dangerous or deadly weapon or instrument of like character." (Emphasis added.) K.S.A. 2006 Supp. 21-4201(a)(2).

Corpus Juris Secundum states in very straightforward language: "A dangerous or deadly weapon is a weapon likely to produce death or serious injury when operable." 94 C.J.S., Weapons § 2. Also, while doing so in a context other than the statute involved here, our Supreme Court has previously defined "deadly weapon" as "an instrument which, from the manner in which it is used, is calculated or likely to produce death or serious bodily injury." *State v. Bowers*, 239 Kan. 417, 425, 721 P.2d 268 (1986).

The part of the statute under which Moore was convicted does not set out any particular use of a knife as an element of the offense. It simply prohibits possession of a knife if it is dangerous and concealed on one's person. The language in *Bowers*, however, concerning the likelihood of death or serious bodily injury provides some guidance in determining whether a knife is dangerous. When this language is combined with the simple definition in Corpus Juris Secundum, it is not a great leap, nor difficult, for a person of common intelligence to conclude that a dangerous knife is therefore a "knife that is likely to produce death or serious injury when used as a weapon." A person of common intelligence would also understand that this could include a kitchen knife or a work knife. See *State v. Sanders*, 263 Kan. 317, 330, 949 P.2d 1084 (1997) (kitchen knife would fit the definition of dangerous knife); *State v. Lassley*, 218 Kan. 752, 752-55, 545 P.2d 379 (1976) (work knife with 6-inch blade is a dangerous knife).

Applying these notions to the instrument found on Moore, a person of common intelligence would understand that a 3.5-inch serrated blade, "very much like a steak knife," would qualify as a dangerous knife under this definition. As previously stated, we have viewed the knife and it indeed does possess a sharp point and blade. It certainly is not a dull butter or putty knife designed for the purpose of merely spreading a substance as opposed to cutting, slicing, or puncturing something.

Moore cites the decision in *Bradvica v. State*, 104 Nev. 475, 477, 760 P.2d 139 (1988), in which the Nevada Supreme Court held that the term "dangerous knife" was unconstitutionally vague. The court, however, did not provide much reasoning or analysis to explain this conclusion. Also, unlike our Kansas statute, Nevada's statute contained no pocket knife exception. The weapon at issue in *Bradvica* was "a small pocket knife" that had a blade 2⁵⁄₁₆ inches long which "[sprung] open from the handle by pressing a switch." 104 Nev. at 476-77. The Nevada Supreme Court's repeated references to the knife as "small" or a "pocket knife," and its comparison of the knife to a "Boy Scout penknife," suggest that the court was concerned that an "ordinary pocket knife" could be considered a "dangerous knife" under the statute and lead to criminal

liability. 104 Nev. at 477. The Kansas statute contains an explicit exception for such a knife. Also, as we stated above, our statute provides some useful context for determining whether an instrument is a dangerous knife. For these reasons, we find *Bradvica* unpersuasive.

The term "dangerous knife" as used in K.S.A. 2006 Supp. 21-4201(a)(2) is not unconstitutionally vague.

Finally, Moore argues the district court erred in finding that the knife at issue was a dangerous knife.

An appellate court has de novo review of cases decided on the basis of documents and stipulated facts. Our Supreme Court has also applied this rule in the criminal context. *State v. Brown*, 272 Kan. 843, 845, 35 P.3d 910 (2001). Much of what we previously stated applies to Moore's argument. One look at the knife he was carrying readily conveys the notion that it can easily cause great bodily harm or death. Even with its relatively short blade of 3.5 inches, it has a very sharp point and edge. It can easily puncture, cut, or slice deeply into another person. It, therefore, is dangerous, and the statute prohibits one from carrying it concealed on his or her person. We also note that this instrument is disguised to appear as a common, harmless, and innocuous grooming tool. This presents additional safety concerns to the public over and above its sharp and pointed blade.

Moore's argument that the instrument is no more dangerous than a pocket knife fails for the obvious reason the legislature has seen fit to provide a specific, limited exception for ordinary pocket knives without regard to whether they are dangerous. It is the legislature's prerogative to provide such limited exceptions, and "[i]t is for the legislature and not the courts to 'draft' an exception to the statute." See *Kansas Dept. of SRS v. Paillet*, 270 Kan. 646, 654, 16 P.3d 962 (2001).

The district court did not err in determining that Moore's knife was a dangerous knife.

Affirmed.